Cite as 2023 Ark. App. 37

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-22-544

|  |  |
|---|---|
| | Opinion Delivered February 8, 2023 |
| DEVIN CAMPBELL<br>APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23JV-21-168] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE DAVID M. CLARK, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**BRANDON J. HARRISON, Chief Judge**

Devin Campbell appeals the order terminating his parental rights to his daughter (Child 1). (The child's mother consented to the termination of her parental rights and is not a party to this appeal.) Campbell's counsel has filed a no-merit brief and motion to withdraw as counsel pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup. Ct. R. 6-9(j) (2022). The clerk of this court delivered a copy of counsel's brief and motion to withdraw to Campbell, advising him of his right to file pro se points for reversal pursuant to Ark. Sup. Ct. R. 6-9(j)(3), but he has not done so. We affirm the circuit court's order and grant counsel's motion to withdraw.

On 8 June 2021, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect after taking a seventy-two-hour hold on newborn Child 1. The attached affidavit explained that DHS had an open case on

the mother, who has two other children—one in foster care (Child 2) and one who had been placed with her biological father (Child 3). At the time the hold was taken, DHS was awaiting test results to confirm whether the circumstances of Child 1's birth presented a Garrett's Law[1] case. The mother named Campbell and another man as possible fathers of the baby. The affidavit noted that Campbell, who is the father of Child 2, had "substance abuse and domestic violence issues" and would not be a safe placement for the baby.

The circuit court granted emergency custody to DHS and later found probable cause to continue custody with DHS. On July 21, the court adjudicated Child 1 dependent-neglected after the parties stipulated that the allegations in the dependency-neglect petition and attached affidavit are true. Pertinent to this appeal, the circuit court ordered Campbell to, inter alia, cooperate with DHS, refrain from using illegal drugs and alcohol, and obtain and maintain stable housing and employment. The court noted that additional services would be addressed after paternity had been established. In August, DNA testing confirmed that Campbell is Child 1's father.

On October 12, the circuit court formally adjudicated Campbell as Child 1's father. The court also reviewed the case and found that Campbell had failed to comply with the case plan and court orders. Specifically, he had not visited the child or participated in any

---

[1]Arkansas Code Annotated section 9-27-303(37)(B)(i) (Supp. 2021), also known as Garrett's Law, provides that "neglect" includes (a) causing a child to be born with an illegal substance present in the child's bodily fluids or bodily substances as a result of the pregnant mother's knowingly using an illegal substance before the birth of the child; or (b) at the time of the birth of a child, the presence of an illegal substance in the mother's bodily fluids or bodily substances as a result of the pregnant mother's knowingly using an illegal substance before the birth of the child. *Garner v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 328, 603 S.W.3d 858.

services through DHS other than his DNA testing. Another review conducted in January 2022 showed that Campbell had not had any contact with DHS and had not visited the child since September.

DHS filed a termination petition on 21 March 2022. As statutory grounds for terminating Campbell's parental rights, DHS cited abandonment, subsequent factors, aggravated circumstances, and prior involuntary termination. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(iv), (vii), (ix)*(a)(3)*, and (ix)*(a)(4)* (Supp. 2021).

The circuit court convened a review hearing on 18 April 2022 and again found that Campbell had failed to comply with the case plan and court orders. He had failed to appear at the review hearing, had not participated in services, and had not provided DHS with any proof that he was addressing his substance-abuse issues.

The circuit court convened a termination hearing on 3 May 2022. Campbell testified that he had been living with his mother, Christina Campbell, for about a week after staying with his sister. He was also on his second week at a new job. He had not completed rehab but had been sober "[g]oing on two months." He said that he had seen the baby only once, when she was around a week old, and that he was currently not able to take care of her. However, he wanted the baby to go to his mother instead of foster parents. He acknowledged that his mother had never met the baby.

Laura Rogers, the DHS supervisor for Faulkner County, testified that the baby was placed in a foster home with her older sister (Child 2) and that the foster family wanted to adopt both girls. Rogers did not foresee any barriers to the baby's adoption. As to possible placement of the child with Christina Campbell, Rogers explained that Christina had

3

previously been denied as a placement for the older sister because she had tested positive for marijuana, she has a possession-of-drugs-and-paraphernalia charge from 2018, and there had been around twenty domestic-violence reports at her address. Rogers did not recommend that the baby be placed with Christina. Rogers also confirmed that Campbell's parental rights to Child 2 had been terminated in February 2022.[2]

Christina Campbell testified that she had asked DHS how to get placement or custody of the baby but "they [wouldn't] tell me anything." She explained that the domestic-violence reports at her address were from ten years ago, when her husband still lived with her, but he was no longer in the home. She denied having any criminal convictions, but she later acknowledged that she had entered a guilty plea on diversion.

The circuit court ruled from the bench that DHS had proved all grounds alleged in its petition. The court's written order made findings on each statutory basis as well as the child's best interest, explaining that the child is adoptable and the foster family wished to adopt both the child and her sister. Finally, the court found that Campbell's continued drug use, instability, and lack of relationship with the child showed that Child 1 would be at risk of potential harm if placed in his custody. Campbell filed a timely notice of appeal from the circuit court's order.

A circuit court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021). Clear and convincing evidence is defined as that degree of proof that will produce in the

---

[2]Campbell initially objected to the introduction of the order terminating his parental rights to Child 2 but later withdrew his objection.

4

fact-finder a firm conviction as to the allegation sought to be established.  *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007).  The appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous.  *Id.*  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.  *Id.*  In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility.  *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).  Only one ground is necessary to terminate parental rights.  *Id.*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal.  The petition must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal.  Ark. Sup. Ct. R. 6-9(j)(1)(A).  Additionally, the petition's statement of the case and facts are required to contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B).  In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal.  *Linker-Flores*, *supra*.

In order to terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B). *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

In her no-merit brief, counsel argues that any challenge to the statutory grounds for termination of Campbell's parental rights would be frivolous. DHS pled multiple statutory grounds, but counsel asserts that the involuntary-termination ground and the aggravated-circumstances ground provide the strongest bases to support termination. First, the involuntary-termination ground permits the termination of parental rights if the court finds that the parent has had his or her parental rights involuntarily terminated as to another child. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(4)*. Counsel explains that Campbell meets the statutory definition of a parent and that he had his parental rights to Child 2 involuntarily terminated, thus meeting the requirements of this statutory ground.

Parental rights may also be terminated if the parent is found by the court to have subjected any juvenile to aggravated circumstances; aggravated circumstances are defined to include a finding by a circuit court that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*. Counsel again notes that Campbell is a parent and that the history of this case proves there

6

was little likelihood of successful reunification. When Child 1 was taken into DHS custody, Campbell was not a placement option due to his substance-abuse issues. Throughout the case, Campbell did not participate in any services offered by DHS except DNA testing and one visit with Child 1. He had not complied with the court orders or the case plan and had not participated in any substance-abuse treatment. At the termination hearing, he admitted he was unable to care for Child 1. Further, Campbell had exhibited the same noncompliance and nonparticipation in Child 2's case, which ultimately resulted in termination of Campbell's parental rights. Under these circumstances, counsel contends, there is no meritorious argument to be made that the circuit court erred in terminating Campbell's parental rights based on this statutory ground.

With regard to best interest, counsel notes that the DHS supervisor testified that the baby was placed in a foster home with her older sister (Child 2), that the foster family wanted to adopt both girls, and that there were no barriers to adoption. This court has held the testimony from a DHS worker that a child is adoptable is sufficient to support an adoptability finding. *Solee v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 640, 535 S.W.3d 687. Thus, counsel asserts, there can be no meritorious challenge to the circuit court's adoptability finding.

Counsel also argues that the circuit court had sufficient evidence to find potential harm, noting Campbell's history of instability. He did not have a stable home, had only recently obtained employment, had not participated in substance-abuse treatment, and had not seen his daughter in almost a year. In light of this evidence, counsel contends that there can be no meritorious challenge to the circuit court's best-interest finding.

7

Counsel has also reviewed the record for all adverse rulings to Campbell made by the circuit court on all objections, motions, and requests made by him at the termination hearing. Counsel states that other than the termination order itself, there were no adverse rulings that warrant reversal. Counsel also asserts that Campbell made no objections during the termination hearing (other than the objection, which he later withdrew, to the admission of the prior termination order in Child 2's case). Counsel notes that Campbell did request that his daughter be placed with his mother, and that request was denied, but contends that there can be no meritorious challenge on that issue. Christina Campbell admitted that she had tested positive for marijuana during Child 2's case and that she had prior charges. In addition, her home had not been approved by DHS for placement. Counsel explains that the circuit court received the evidence regarding the agency's concerns as to Christina and agreed it was not in the child's best interest to be placed in that home, and Campbell made no argument to the contrary. Further, this court has found that where the relatives have not been approved for placement and the child remained in foster care, the existence of potential relatives was not a basis to reverse a termination decision. *See Dominguez v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 2 (rejecting an argument that termination was not warranted where relatives were available but none had been approved for placement). Counsel concludes that no meritorious argument could be made that the circuit court committed reversible error when not placing this child in her grandmother's home.

Counsel's statement that Campbell made no other objections during the termination hearing is not accurate; Campbell did object during DHS's cross-examination of Christina,

8

asserting that DHS was asking a compound question. The court did not explicitly sustain the objection, but it did appear to agree with Campbell and instructed DHS counsel to "just ask her the question you want her to answer." So, while it may have been the better practice for appellate counsel to discuss this exchange out of an abundance of caution, we hold that the court's ruling was not adverse to Campbell. We also note that even if an adverse ruling is omitted from a no-merit brief in a termination case, we may affirm if the ruling would clearly not constitute a meritorious ground for appeal. *Houseman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153.

We hold that the circuit court had sufficient evidence upon which to find that it was in the child's best interest for Campbell's rights to be terminated and that statutory grounds for termination existed. Thus, we grant counsel's motion to withdraw and affirm the termination of Campbell's parental rights.

Affirmed; motion to withdraw granted.

VIRDEN and THYER, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.