

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–15-154

| | |
|---|---|
| | **Opinion Delivered** June 17, 2015 |
| BRITTANY MORTON<br>APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. JV2013-243] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN<br>APPELLEES | HONORABLE ROBERT EDWARDS, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Brittany Morton appeals the White County Circuit Court's decision to terminate her parental rights to her children M.M., C.M., and D.M. Morton argues that clear-and-convincing evidence does not support the termination grounds relied on by the circuit court and that the court erred in finding that termination was in the children's best interest. We affirm the circuit court.

## I. *Case History*

The Arkansas Department of Human Services (DHS) petitioned for emergency custody of M.M., C.M., and D.M. in September 2013 after Morton and Hector Morales, Morton's partner, were arrested and charged with DWI/DUI and endangerment of the welfare of a minor. The court adjudicated the children dependent-neglected in November 2013 because "the parents were stopped down in Jacksonville, Arkansas, allegedly doing 60 miles per hour in a 45 per hour zone; the child, D.M., was in the car

looking dirty; the parents could not remember the last time the child was fed; the mother was positive for methamphetamines, marijuana, and benzodiazepines . . . and there is a true report on the family from 2008 for drug use causing inadequate supervision." The court noted in its April 2014 review order that Morton was "totally non-compliant with the case plan" and was in the Cleburne County jail facing new felony charges. The court also found that DHS had made "reasonable efforts" towards reunification. An October 2014 permanency-planning review order states that Morton was "not in compliance with the case plan and orders of the court. [She] lives with family and friends, she is unemployed, she has not completed substance abuse treatment; however, she does have a mental health appointment in October, she did complete her psychological evaluation, she did complete parenting, and she is testing clean from using controlled substances." The permanency-planning order also states that DHS had made reasonable efforts by providing substance-abuse treatment, parenting classes, psychological evaluation, and counseling, among other things.

DHS petitioned for termination of parental rights in October 2014, around the same time the permanency-planning order was entered. It alleged that terminating Morton's parental rights was in the children's best interest and that two statutory grounds for termination existed under Arkansas Code Annotated sections 9-27-341(b)(3)(B)(i)(*a*) (failure-to-remedy ground) and 9-27-341(b)(3)(B)(vii)(*a*) (other-factors-arising ground).

During the November 2014 termination hearing, DHS caseworker Darby Miller testified that the department had past involvement with Morton and two of her children in 2008. She explained that the children were removed because of Morton's drug use and

remained in foster care for two years; but the children were eventually returned to Morton, and the 2008 case was closed.

Caseworker Miller said that she was concerned about the children returning to Morton because, although Morton had attended a few NA meetings, she had not completed a drug-abuse assessment or received drug counseling. Miller also testified that Morton had no suitable housing, was only recently employed, and had not provided proof of income. Miller said that the children were "very adoptable" and that the foster parents were willing to adopt them and recommended that the court terminate Morton's parental rights because "it would be very detrimental to these children to return to her care." This was because Morton lacked adequate housing, income, and "no drug treatment to really focus on the problem that started the case." Miller could not think of any other service that DHS could offer Morton that would help her reunite with the children.

On cross-examination by parent counsel, Miller again agreed that Morton had no positive drug screens "for the last six months or so." Miller acknowledged that Morton had some difficulties getting the court-ordered drug assessment done because she did not have any proof of income, which Morton needed to obtain through the Social Security office. She also said that "it can be difficult to get [the assessment] done very quickly if you wait to the last minute."

On cross-examination by the attorney ad litem, Miller said that she was concerned about Morton's housing because Morton lived with her mother and "in the previous case in 2008, there were concerns about [Morton's mother's] drug abuse and mental health."

When questioned by the court, Miller responded that Morton had reportedly gotten a job at McDonald's the week before the hearing and had attended case staffings when she was not in jail.

A secondary caseworker from Cleburne County also testified—Lindsey Payton. Payton was assigned to the case because Morton was currently living in Cleburne County with her mother. Payton introduced pictures of Morton's residence and concluded that the home was not appropriate for children because it was "torn apart," had an exposed water heater, insulation was hanging from the ceiling, had a "very cold" bedroom, and there were tools everywhere. Payton had not gone over the case plan with Morton, but she had spoken to Morton about why she had not "gotten into substance abuse treatment." Morton reportedly told Payton that she "couldn't afford to go over to the Social Security Office and pay the $30.00" to show that she had no employment. Peyton told the court that because Morton was working at McDonald's, Morton could now show proof of employment.

Morton testified too. Morton told the court that she had been incarcerated for about six months during the case, that the outcome of her criminal case was a guilty plea to possession of meth, and that she was sentenced to a period of probation. The sentencing order in the record reflects that she was convicted of three separate charges. One conviction was for possession with intent to deliver methamphetamine, and Morton received five years' probation. She admitted that the previous time her children were in foster care, it was because of her drug use and that she had received drug treatment in the

prior, closed case. Morton maintained that she had not received a referral for drug treatment in the current case until two weeks before the hearing.

When questioned by the court about her history with DHS, Morton again admitted that both times her children were removed, it was because of drug use. Morton did not appear to take responsibility for her use of illegal drugs but instead blamed Hector Morales because he "pushed" her to use drugs. She had separated from him for a year and half after the first DHS case was closed, but reunited and had another child with him. Morton told the court that Morales was in Mexico and that he had been deported after serving time in jail.

Morton also testified that she had completed a psychological evaluation, had been going to NA meetings, and had recently gotten a job at McDonald's in Heber Springs after putting in applications "everywhere" for months. Morton had also worked for a brief time filling in for a Lisa's Steakhouse employee for a few weeks during the summer. In the end, Morton asked the court for "a little more time" to become an appropriate parent. At no point did she request any additional services from the court or DHS.

The circuit court then called Caseworker Miller back to the stand to ask her a few more questions in response to Morton's testimony. Miller testified that she had referred Morton to Wilbur Mills treatment facility in 2013, during the "early stages of the case," but that Morton had "failed to show up for the assessment." A second referral occurred in September or October 2014. Miller had received a letter from the Wilbur Mills facility stating that both Morales and Morton failed to show up for the treatment assessment that was scheduled for 12 December 2013.



In its November 2014 termination order the court found that DHS had proved the two statutory grounds alleged in its petition by clear and convincing evidence. The court also found that a termination of Morton's parental rights was in the children's best interest, that the children were likely to be adopted, and that they faced potential harm to their health and safety if returned to her. Morton appealed.

II. *Discussion*

A circuit court's order that terminates parental rights must be based on clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2011); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Pratt v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261. Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205.

We review termination-of-parental-rights cases de novo. *Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. But we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id*. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Id*.



A. Statutory Ground

Morton argues that the court erred when it terminated her rights based on the "failure to remedy" ground. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 2011). This ground provides that termination is appropriate if the court finds, by clear and convincing evidence, that the juveniles have been adjudicated dependent-neglected and have continued to be out of the parents' custody for at least twelve months, and despite meaningful efforts by DHS to rehabilitate the parents and correct the conditions that caused removal, those conditions have not been remedied.

Morton does not dispute that the children were removed because of her drug use and poor parenting. She argues that those issues had been remedied before the termination hearing, citing her six-month sobriety, proof of NA meeting attendance, completion of parenting classes, successful visitation, and recent employment as evidence. She contends that her failure to obtain the drug-and-alcohol assessment was "not due to an unwillingness on her part." In Morton's view, DHS just let her "sink or swim" when it "was on notice and knew that lack of income would be a hindrance" to her obtaining the assessment, and DHS did not refer her until the last minute. Morton also argues that DHS should have provided financial assistance to help pay for the drug assessment and to help her secure housing.

DHS responds that the circuit court's failure-to-remedy finding was not clearly erroneous given Morton's prior drug use, which caused her neglect of the children and lasted for several months even after the children had been taken from her custody, that she was jailed for five months because of new felony drug charges, and that she never attended

a drug assessment. Morton's lack of a proper home and income, in DHS's view, also demonstrated a continued inability to parent and remedy the cause for removal.

We affirm the termination. The circuit court made prior reasonable-efforts findings in this case, which were not appealed. So we will not review the court's reasonable-efforts findings regarding the time periods covered by the prior orders. *Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 522, at 9, 385 S.W.3d 367, 372. We only look at the time moving forward from the permanency-planning order, which was entered about a month before the termination hearing. And the record shows that Morton did not request financial assistance or other services from DHS during that time. Nor did Morton specifically request additional services during the termination hearing; she only asked for more time.

In its written order, the court credited Caseworker Miller's testimony. Recall that Miller testified that Morton had the opportunity to start addressing substance abuse issues at the beginning of the case but chose to not attend her scheduled drug assessment. While Morton testified that DHS had referred only Morales, not her, for the assessment, the court credited Miller's contrary testimony. And it is undisputed that Morton's drug use continued for several months after the children were removed, resulting in a felony drug conviction during the pendency of the case.

The goal of section 9-27-341 is to provide permanency in a child's life in circumstances where returning the child to the family home is contrary to the child's health, safety, or welfare, and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.

*Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, at 9, 372 S.W.3d 849, 854. Morton's late-in-the-game attempts to comply with the case plan after her release from jail in June 2014, and her request for more time at the termination hearing, are insufficient reasons to reverse under our caselaw. *See Gutierrez v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 575, 424 S.W.3d 329 (affirming on failure-to-remedy ground when drug use continued for several months during the case); *Loveday v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 282, 435 S.W.3d 504 (affirming on same ground when parent was jailed for new drug charges and did not have safe and stable housing for children).

Because we affirm the court's finding on the failure-to-remedy statutory ground, and proof of only one statutory ground is sufficient to terminate parental rights, we need not address the other statutory ground.

### B. Best Interest

Morton also argues terminating her rights is not in the children's best interest. She denies that there was any evidence to show potential harm to the children because she was complying with the case plan and demonstrating a "willingness and desire to have her children home." Morton contends that she has made progress and that her lack of drug treatment and appropriate housing was not due to an unwillingness or inability on her part, but was, in fact, due to DHS's failure to provide services. She argues that DHS

 

demonstrated no risk of potential harm, so it could not be in her children's best interest for her rights to be terminated.

In its order, the court wrote:

> The Court finds by clear and convincing evidence that it is in the best interest of the juveniles to terminate parental rights. In making this finding, the court specifically considered (A) the likelihood that the juveniles will be adopted if the termination petition is granted, specifically the testimony of Darby Miller who stated the children are likely to be adopted by the foster parents if parental rights are terminated; and (B) the potential harm on the health and safety of the juveniles caused by returning the juveniles to the custody of the parents. The fact the mother does not even have a home of her own to live in and is living with her parents and the home is not suitable for the children to live in demonstrates how the juveniles would be at risk of potential harm if returned to the parent. Even though the mother is currently testing clean from use of controlled substances, she was jailed during the course of this case for felony drug charges among other items and she is still not in drug treatment now that we are fourteen months into this case. The mother has been through the system before in a 2008 case due to drug use as well. It is time to achieve permanency for the children.

We hold that the court's best-interest finding is not clearly erroneous. A court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, at 3, 451 S.W.3d 231, 233. The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *L.W. v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 44, 380 S.W.3d 489. The potential-harm evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. *Id.* Morton's continued use of illegal drugs for years is sufficient evidence of potential harm. The court's best-interest



determination is largely a credibility call, and we defer to its assessment of Morton's credibility.

### III. *Conclusion*

We affirm the circuit court's termination of Morton's parental rights.

Affirmed.

KINARD and GLOVER, JJ., agree.

*Dusti Standridge*, for appellant.

*Tabitha Baertels McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.