

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-16-1045

| | |
|---|---|
| LYDIA SELSOR AND EDWARD TROUTMAN<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | **Opinion Delivered:** March 15, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION<br>[NO. 60JV-15-233]<br><br>HONORABLE WILEY BRANTON, JR. JUDGE<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

Lydia Selsor and Edward Troutman appeal the August 25, 2016 termination of their parental rights to their two minor children, five-year-old K.S. and one-year-old L.T.,[1] arguing that termination was not in the children's best interest. We affirm.

## I. *Relevant Facts*

The Arkansas Department of Human Services (DHS) became involved with this family on February 5, 2015, when L.T. was born with drugs in her system. Both Lydia and Edward tested positive for methamphetamine. K.S. was living with a neighbor in unsafe housing. The five-year-old had poor hygiene and tested positive for methamphetamine and

---

[1]Lydia is the mother to both children. Edward is the father only to L.T.; K.S.'s father is not a party to this appeal.

amphetamines subsequent to his removal. DHS exercised an emergency hold, stating concerns of drug use, lack of employment, and lack of stable housing.

The parents stipulated to probable cause on February 19, 2015, and to findings of dependency-neglect on March 31, 2015. In addition to the dependency-neglect finding, the court also found that the children had been exposed to aggravated circumstances as contemplated in the statute.[2]

The case proceeded through four permanency-planning hearings. Lydia and Edward stayed clean throughout the case, complied with their case plan, and had completed all the services required by the November 3, 2015 hearing.

At the conclusion of the January 12, 2016 permanency-planning hearing, the circuit court believed the parents had made enough progress to increase visitation, commenting that if everything went well it would even "entertain an agreed order returning custody prior to the next hearing." There were two weekend visitations before the attorney ad litem filed a motion to stop them, alleging that the parents were facing eviction, did not have electricity, had left a puppy by itself at the home for four to five days, and that the children came back smelling like cigarettes. DHS had suspended visitation for the upcoming weekend but disagreed that weekend visitation should be stopped altogether. It asserted that the parents had made remarkable progress to this point, the electricity was back on, the landlord was willing to work with the parents, and the puppy had been stranded over the weekend due to the snow storm. DHS contended that this was just a setback, and that it did

---

[2]Ark. Code Ann. 9-27-341(b)(3)(B)(ix)(a)(3) (Repl. 2015).

not believe the children would be at risk if visitation continued. The trial court granted the ad litem's motion.

The trial court changed the goal of the case to termination of parental rights at the May 3, 2016 permanency-planning hearing, citing the parents' inability, despite 15 months of services, to secure and maintain appropriate, stable housing. The court also stated the parents had judgment issues and that "there are no additional services that will actually improve their lack of insight."

DHS filed a petition to terminate Lydia and Edward's parental rights, and a hearing was held on July 26, 2016. At trial, the court heard testimony from K.S.'s occupational therapist about K.S.'s developmental disability and how important structure and routine were to managing it. The DHS caseworker testified that the parents had adequate income and had completed all the services, but the children could still not return to their parents' custody because Lydia and Edward did not have a home. She further discussed how she had referred the parents to the housing authority, and they had been approved but did not move in because they did not have a $500 cash deposit available. She testified that DHS did not offer cash assistance because she believed they did have the deposit, and that they just did not want to pay the $200 per month it would cost to rent it. Lydia testified that she would have taken the apartment and that the $500 deposit was all that was standing between her and her children at that time. Psychological reports finding both parents to have below-average cognitive abilities were also admitted.

In its order, the court found that the parents had never obtained stable housing—they had lived in at least four different cities since the case had been opened—and still did

not have a place of their own by the termination hearing. This was especially troublesome to the court considering that K.S. suffered developmental delays that required a consistent routine and stability. It found the argument that the parents just needed a little more time and deposit money disingenuous. Even if the parents had requested cash assistance, the court reasoned, it may not have ordered it because the parents have adequate income, had a year and a half to find stable housing, and a lessened burden because their children were in foster care. This demonstrated to the court that the parents lacked the appropriate judgment to meet the special needs of their children.

The court terminated Lydia and Edward's parental rights under the grounds of failure to remedy, subsequent factors, and aggravated circumstances. It found that termination was in the best interest of the children because the parents did not have the ability to meet their children's special needs, and if returned, they would be subject to housing and emotional instability.

Lydia and Edward now appeal, arguing that there was not sufficient evidence to support a best-interest determination.[3]

---

[3]The parents spend the last five pages of their argument discussing how termination was not warranted under the grounds listed by the trial court, but the appeal is otherwise completely styled as though the only issue for consideration by this court is the best-interest finding. Out of an abundance of caution, we will discuss how termination was appropriate under the 12-month failure-to-remedy ground. The lower court found three statutory grounds relevant to Lydia and Edward, but only one needs to be proved to support the termination. *Dunn v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 34, at 7, 480 S.W.3d 186, 190.

## II. *Standard of Review*

We review termination-of-parental-rights cases de novo. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, at 4–5, 456 S.W.3d 383, 386. It is DHS's burden to prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights as well as the existence of at least one statutory ground for termination. *Id.* On appeal, the inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* We give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Id.*

## III. *Best Interest*

Lydia and Edward argue that there was insufficient evidence to support the trial court's best-interest determination because they were bonded with their children, complied with their case plan, and their sufficient progress warranted additional time. They contend that a little more time would have allowed DHS to provide them with "the one service that could effectuate reunification—one-time cash assistance for [them] to obtain housing"— and that their parental rights were terminated, essentially, because they were poor.

The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. One step requires consideration of whether the termination of parental rights is in the children's best interest, Ark. Code Ann. § 9-27-341(b)(3)(A), and the other requires proof of one or

more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The best-interest determination must consider the likelihood that the children will be adopted and the potential harm caused by returning custody of the children to the parent. [4] *Spencer v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 96, at 5–6, 426 S.W.3d 494, 498. The court, however, does not have to determine that every factor considered be established by clear and convincing evidence. *Id*. Instead, after considering all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *Id*.

Being poor, standing alone, should not be a potential harm that would substantiate a best-interest finding in a termination-of-parental-rights proceeding. *Vail v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 150, at 16, 486 S.W.3d 229, 237. Nor are we so disillusioned as to think that unstable, unsuitable housing is not a symptom of poverty—it is—yet this court has stated, time and again, that a failure to provide appropriate housing is contrary to the best-interest of children. *See, e.g.*, *Linker-Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 137, 194 S.W.3d 739, 744 (2004); *Spencer*, 2013 Ark. App. 96, at 7, 426 S.W.3d at 499; *Latham v. Ark. Dep't of Health & Human Servs.*, 99 Ark. App. 25, 33, 256 S.W.3d 543, 548 (2007); *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 262, 148 S.W.3d 780, 784 (2004). A stable home is one of a child's most basic needs, and that cannot be ignored. *Latham*, *supra*.

Here, however, the trial court took pains in its order terminating parental rights to acknowledge that it was not just the lack of stable housing that was at issue, but also the lack of judgment these particular parents demonstrated in their inability to secure that housing:

---

[4]Lydia and Edward do not challenge the adoptability findings on appeal.

It's not as if these parents are fit and simply had temporary housing problems. If Ms. Selsor and Mr. Troutman had had the ability to achieve and maintain stability, they would have done it during the year and one half pendency of this case during which time their children have been in foster care. Their burden was even lessened due to the children being in foster care. The parents have had many opportunities to obtain and/or maintain housing. On one occasion they were allowed to maintain housing by the landlords even though they were behind in rent. The family has adequate income, but not stable housing. That housing did not last. The parents have been evicted two times since the case began and have had four homes since that time. Even if Ms. Selsor and Mr. Troutman had requested cash assistance, the court may have not have ordered it. The parents lack the judgment and stability and seem unable to maintain any reliable housing. At some point, parents have to be able to stand on their own. It's a parental fitness issue.

The determination of potential harm is forward-looking by its very nature. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, at 13, 314 S.W.3d 722, 728–29. The trial court did not err in looking at the parents' past instability and concluding that there was nothing to demonstrate that they would be able to acquire, much less maintain, stable housing in the future. Furthermore, the intent of the juvenile code is to provide permanency in a juvenile's life, and the evidence must be viewed from the juvenile's perspective. *See* Ark. Code Ann. § 9-27-341(a)(3).

Termination of parental rights is an extreme remedy and is in derogation of the natural rights of the parents. *Linker-Flores*, *supra*. However, parental rights should not be allowed to continue to the detriment of the child's welfare and best interest. *Id*. Here, the evidence demonstrates that Lydia and Edward had over a year and a half to find and maintain safe, appropriate housing, but they were unable to do so. The trial court's best-interest determination is affirmed.



IV. *Grounds*

For DHS to prevail on the failure-to-remedy ground, it must demonstrate that (1) a juvenile was adjudicated dependent-neglected, (2) the juvenile has continued to be out of the custody of the parent for twelve months, (3) the parents failed to remedy the cause of the removal, and (4) the failure occurred despite meaningful efforts by DHS to rehabilitate the parent and correct the conditions that caused removal. Ark. Code Ann. § 9-27-341(b)(3)(B). The children entered foster care due to their parents' drug use, lack of income, and lack of stable housing.

As previously discussed, Lydia and Edward maintain that DHS did not provide meaningful rehabilitative efforts because it did not offer one-time cash assistance for a deposit on an apartment. DHS offered the following services: transportation, clothing vouchers, case management, medical services, worker visits, referrals for psychological evaluations, drug treatment, individual counseling, parenting classes, DNA paternity testing, casework services, a housing-authority referral, and random drug screens. These are meaningful services, especially when testimony indicates DHS had, in fact, considered providing the deposit money and chose not to based on statements Lydia made to her caseworker.

During the course of the case the parents achieved sobriety and acquired jobs, adequate income, and reliable transportation. Even so, they were not able to remedy the last element that warranted removal: a lack of stable housing. The trial court found the lack of housing stability to be a result of the parents' inability to use good judgment. A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a

mistake has been made. *Dowdy, supra.* We are not left with that impression here and therefore affirm.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.