Cite as 2025 Ark. App. 7

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-24-526

| | |
|---|---|
| ANGELA NORRIS | Opinion Delivered January 15, 2025 |
| APPELLANT | |
| | APPEAL FROM THE WASHINGTON |
| | COUNTY CIRCUIT COURT |
| V. | [NO. 72JV-23-182] |
| ARKANSAS DEPARTMENT OF | HONORABLE DIANE WARREN, |
| HUMAN SERVICES AND MINOR | JUDGE |
| CHILDREN | |
| APPELLEES | AFFIRMED; MOTION TO |
| | WITHDRAW GRANTED |

**RAYMOND R. ABRAMSON, Judge**

Angela Norris appeals an order entered by the Washington County Circuit Court on May 27, 2024, terminating her parental rights to her daughters, minor child 1 (MC1) and minor child 2 (MC2).[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), Norris's counsel has filed a motion to be relieved as counsel. The clerk of our court sent copies of the brief and the motion to withdraw to Norris, informing her of her right to file pro se points for reversal pursuant to Rule 6-9(j)(3), and she has filed pro se points. The Arkansas Department

---

[1]The parental rights of the children's biological father, Gregory Bumstead, were also terminated, but this court granted his separate motion to dismiss his appeal on October 23, 2024.

of Human Services (DHS) and the minor children have filed a joint response to her pro se points on appeal. We affirm the termination decision and grant counsel's motion to withdraw.

In December 2022, DHS opened a protective-services case with the family due to a true finding of medical and environmental neglect. At the time, MC2 had a mouth infection that required the removal of her teeth. The parents failed to take MC2 to her follow-up dental appointments and had an outstanding balance of $400. The family was also adjudicated a "Family In Need of Services" ("FINS") due to the juveniles' excessive absences from school.

On March 9, 2023, a show-cause hearing was held in the FINS proceeding. The FINS officer testified as to concerns regarding the juveniles' grades, ongoing lice issues, the dirty condition of the family home, and the children smelling like cat urine. The school resource officer testified as to concerns about the juveniles' health, grades, and hygiene. The school principal testified as to concerns regarding the children's health, wellness, and hygiene; ongoing issues with the family, such as the inability to contact the parents; and the children's complaints of constant hunger. The DHS caseworker testified that DHS had already provided the family with home visits, drug screens, resources, a twin mattress, a vacuum, multiple food drop-offs, budgeting, food safety, and education on how to utilize the food received from the pantry.

Norris testified that she paid off the water bill and electric bill, set up a rent-to-own contract on a washer and dryer set, paid personal property taxes, and was able to purchase a

vehicle. At the conclusion of the hearing, the FINS court found the parents unfit for failing to meet the juveniles' educational, environmental, and medical needs and removed the juveniles from the care of the parents.

On March 13, 2023, DHS filed a petition for dependency-neglect of MC1 and MC2. On March 15, two days after DHS filed the petition for emergency custody and dependency-neglect, the circuit court entered an ex parte order for emergency custody. A probable-cause hearing was held on March 16. The court found that probable cause existed at the time of MC1 and MC2's removal, that probable cause continued to exist, and that it would be contrary to the welfare of the children to be returned home.

The adjudication hearing was held on May 2. The circuit court found MC1 and MC2 dependent-neglected due to medical neglect and environmental neglect, finding specifically that the allegations in DHS's petition were true. The court further held that the parents failed to provide necessary food, clothing, shelter, and medical treatment for the juveniles and that their housing was inadequate because it was saturated with cigarette smoke and cat urine, lacked a designated space for the children to sleep and maintain their possessions, and posed an immediate threat to the juveniles because there was a person residing in the home who used oxygen while other residents smoked in the home. There were also chronic lice infestations. The court found Norris unfit due to her failure or refusal to provide necessary medical treatment or adequate housing and her inability to meet the basic needs of her children.

The goal of the case was set as reunification with a concurrent goal of adoption since the family had previously been involved in a dependency-neglect case for substantially similar reasons. The parents were awarded four hours of unsupervised visits to occur outside the home at a location approved by DHS. The parents were ordered to obtain and maintain appropriate and adequate housing; maintain stable employment; and to follow the recommendations of the psychological evaluations and case plan.

A review hearing was held on August 22, 2023. The circuit court found that the conditions of the home had not been remedied and that the only portion of compliance that the parents had attained was stable employment. The parents had not complied with individual counseling despite referrals having been made. Norris had not attended any individual counseling sessions. The parents had attended only one medical appointment for the children despite notice of several scheduled appointments. The parents had not maintained clean and safe housing appropriate for themselves or the children. DHS had complied with the case plan and orders of the court. The court found that the parents had not satisfactorily complied with the case plan and orders of the court.

A permanency-planning hearing was held on January 23, 2024. Neither parent appeared at the permanency-planning hearing. Norris had not achieved stable and appropriate housing and had not availed herself of counseling, budgeting, or homemaking services. She was, however, employed. The goal of the case was changed to adoption with no concurrent goal. Visitation was modified to thirty minutes a week by electronic means with one 2-hour in-person visit a month.

On March 18, DHS filed a petition for termination of parental rights alleging that Norris's parental rights should be terminated on four grounds: (1) the children had been out of the home for twelve months and the parents had failed to remedy the reason for removal; (2) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that the placement of the juveniles in the custody of the parents is contrary to the juveniles' health, safety, or welfare and that the parents had manifested an incapacity or indifference to remedy those subsequent factors; (3) Norris had her parental rights involuntarily terminated as to two other children due to medical and environmental neglect; and (4) the parents subjected the juveniles to aggravated circumstances with little likelihood of successful reunification despite services being provided.

The termination hearing was held on April 30, 2024. At the outset, DHS introduced its exhibits 1 through 6 without objection. Whitnee Patterson, the DHS family service worker assigned to the case, was the first witness. The children were removed on March 9, 2023, and had been out of the home since that time. They were found dependent-neglected as a result of medical neglect and environmental neglect. DHS had made meaningful efforts toward the goal of reunification.

Patterson's court report was introduced without objection. The court report addressed the services that had been offered throughout the case. Norris was minimally compliant with the case plan. Norris did not maintain employment throughout the case. Patterson believed Norris was unemployed. Norris did not have safe and appropriate housing

for herself and the juveniles. DHS last knew Norris to be living in a tent in Fayetteville, which presented a safety concern for housing.

Patterson prepared a "Family Time Log" that was introduced without objection. The parents participated in family time. There had been some redirection during some conversations a couple of times; otherwise, the children seemed to enjoy the family time for the most part. However, neither parent had remedied the issues that caused the children to come into care. Neither parent had been in full compliance with the case plan. Patterson testified that termination was in the children's best interest and that the children are adoptable.

Norris was DHS's next witness. She testified that she had been living wherever she could, whether it be with friends or family, since March 2024. She was trying to find housing. She was currently working—as of the week before the hearing—as a home-health caregiver for a friend's disabled mother. They were paying her between $40 and $60 a day out of their own pocket. She testified that she was planning to get a second job and to also go back to school. Norris's parental rights had been terminated to her first two children in 2015.

During closing arguments, Norris's attorney admitted that the children could not be placed with Norris since she did not have housing but asked that she be granted additional time to get housing. The circuit court denied that request. At the close of all the testimony, evidence, and arguments of counsel, the circuit court terminated Norris's parental rights. This timely no-merit appeal followed.

This court reviews termination cases de novo. *Apelu v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 480, 422 S.W.3d 210. Termination is an extreme remedy and in derogation of the natural rights of parents. *Id.* Therefore, the party seeking to terminate the parental relationship bears a heavy burden. *Id.* The facts justifying termination must be proved by clear and convincing evidence, which has been defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.*

The appellate court will not reverse a termination unless the circuit court's findings are clearly erroneous, giving due regard to the court's opportunity to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

Termination is a two-step process. *Harbin v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 715, 451 S.W.3d 231. The first step requires proof that termination is in the best interest of the child, with the circuit court considering the likelihood that the juvenile would be adopted and the potential harm that would be caused if the child was returned to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2023). The second step requires clear and convincing evidence of one or more statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). A finding of both must be made to support a termination decision; as such, a successful challenge of one step is sufficient for reversal. *See, e.g., Conn v. Ark. Dep't of Hum.*

*Servs.*, 79 Ark. App. 195, 85 S.W.3d 558 (2002) (reversing where grounds were proved, but no evidence was presented to support the best-interest prong).

There could be no issue of arguable merit to raise on appeal as to the sufficiency of the evidence to support the statutory grounds in this case. Proof of only one statutory ground is sufficient to terminate parental rights. *Davis v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 406, 587 S.W.3d 577. Here, the circuit court terminated Norris's parental rights on two of the four grounds pled by DHS:

> • That a juvenile has been adjudicated by the court to be dependent-neglected and had continued to be out of the custody of the parent for twelve (12) months and, despite meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*.
>
> • That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

Because only one ground is necessary to support termination, we will address only the failure-to-remedy ground. This ground requires that four findings be proved by clear and convincing evidence: (1) the children were adjudicated dependent-neglected; (2) the children had been out of the custody of the parent for twelve months; (3) the parent failed to remedy the cause of the removal; and (4) the failure occurred despite meaningful efforts by DHS to rehabilitate the parent and correct the conditions that caused removal. *Selsor v. Ark. Dep't of*

*Hum. Servs.*, 2017 Ark. App. 182, at 8, 516 S.W.3d 314, 319; Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*.

The first and second elements are straightforward. The adjudication order was entered as an exhibit without objection showing the children were adjudicated dependent-neglected by order filed June 25, 2023. The caseworker testified that the children had been removed from Norris's custody on March 9, 2023, and had remained out of her home since that time. At the time of the termination hearing, the children had been out of Norris's custody for over thirteen months. The third element required a finding that the parent failed to remedy the cause of the removal. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*.

The conditions that precipitated removal were set forth in the affidavit attached to the petition for emergency custody and dependency-neglect. The family had an open protective-services case for approximately three months leading up to removal, and the family was involved in an ongoing FINS case. At the adjudication hearing in the underlying proceeding, the circuit court found that the parents had failed to provide food, clothing, shelter and medical treatment necessary for the juveniles' well-being. The children were adjudicated dependent-neglected as a result of medical neglect and environmental neglect. Consequently, Norris needed to remedy her inability to provide the basic needs of her children, which included the need to provide adequate housing and maintain stable employment. She never did so.

While her employment was minimal, her inability to secure stable housing is a sufficient basis on its own to show Norris failed to remedy the cause of removal. *See Selsor*,

2017 Ark. App. 182, 516 S.W.3d 314 (affirming a termination of parental rights where parents lacked stable housing despite having achieved sobriety, adequate employment and income, and reliable transportation). Norris's admitted lack of any available housing was clear and convincing evidence that she had not remedied the cause of removal.

The fourth and final element required to be proved by DHS was that it offered meaningful efforts to rehabilitate the parent and correct the conditions that caused removal. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*). Throughout the juvenile court proceeding, the circuit court made findings that the DHS had made reasonable efforts to provide the family services and finalize a permanency plan for the juveniles.

Those prior orders were not appealed, and we will not review reasonable-efforts findings regarding the time periods covered by prior orders not appealed. *Morton v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 388, at 8, 465 S.W.3d 871, 876. Thus, we will look only at the time moving forward from the January 23, 2024 permanency-planning hearing, which was held approximately three months prior to the April 30, 2024 termination hearing. *Id.*

Norris did not testify that she needed additional services; rather, she requested only that she be given additional time to secure housing. A failure to challenge prior reasonable-efforts findings and a failure to request any specific services claimed as necessary to remedy the cause of removal are waived on appeal. *Peterson v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 75, at 11, 595 S.W.3d 38, 44–45. Here, there was sufficient evidence to support the circuit court's determination that DHS offered meaningful efforts to rehabilitate the parent and correct the conditions that caused removal. There was clear and convincing evidence to

10

satisfy every element of the "failure to remedy" finding. As such, we affirm the circuit court's determination that statutory grounds existed.

The Juvenile Code requires that a best-interest finding be based on a consideration of at least two factors: the likelihood of adoptability (which is concerned with whether adoption is a viable permanency plan for the juvenile) and the potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Potential harm must be viewed in a forward-looking manner and considered in broad terms. *Dowdy v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722; *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Each factor does not have to be proved by clear and convincing evidence; rather, it is the overall evidence that must demonstrate clearly and convincingly that termination is in the child's best interest. *McFarland v. Ark. Dep't of Hum. Servs.*, 91 Ark. App. 323, 201 S.W.3d 143 (2005).

Regarding best interest, there was uncontroverted testimony from the caseworker that the minor children are adoptable. The children did not have significant medical needs, and there were no known barriers to adoption. That testimony was not challenged. We have held this is sufficient for the circuit court to find this factor of the best-interest analysis. *See Brabon v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 2, 388 S.W.3d 69.

Likewise, with regard to potential harm, the circuit court had sufficient evidence to find that MC1 and MC2 would be subject to potential harm if returned to Norris's custody. Potential harm must be viewed in a forward-looking manner and in broad terms. *Dowdy*,

2009 Ark. App. 180, 314 S.W.3d 722. We are not required to find that actual harm would result or to affirmatively identify potential harm. *Lee*, 102 Ark. App. 337, 285 S.W.3d 277.

The evidence of Norris's homelessness and her lack of stable employment supports the circuit court's conclusion that the children would be at risk of harm if they were returned to Norris's custody. *See Selsor*, 2017 Ark. App. 182, at 6, 516 S.W.3d at 318 (holding that the lack of an appropriate home is potential harm because "a stable home is one of a child's most basic needs"). Additionally, the circuit court is authorized to consider prior terminations as an indicator of potential harm. *McElwee v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 214, 489 S.W.3d 704. Given that Norris's parental rights were terminated on substantially similar grounds as to her other children on previous occasions, and because she admittedly was unable to take custody of the children at the time of the termination hearing, we hold there was sufficient evidence to find that the children would be at risk of harm if returned to her custody.

In accordance with Ark. Sup. Ct. R. 6-9(i)(1)(A), Norris's counsel has reviewed the record for all adverse rulings to the parties made by the circuit court on all objections, motions and requests made by them at the hearing from which the appeal arose. Counsel correctly asserts that other than the termination itself, the only other adverse ruling was the circuit court's denial of Norris's request for additional time to obtain housing.

A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Morton*, 2015 Ark. App. 388, at 9, 465 S.W.3d at 876. Furthermore, a circuit court is permitted to consider a parent's past behavior over a

meaningful period of time as a good indicator of what the future may hold. *Thompson v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 167, 374 S.W.3d 143.

Here, despite having thirteen months to achieve stability, Norris never secured appropriate housing, nor did she secure stable employment. Also, Norris's parental rights to two other children had been previously terminated for similar reasons. There was simply no evidence to support a determination that additional time would have resulted in a different outcome. Under these facts, the children's need for permanency and stability outweighed Norris's request for additional time, and the circuit court did not err in denying her request for additional time.

While Norris did file pro se points, they are merely conclusory statements expressing her desire to appeal the decision. Some of her arguments ask us to reweigh the evidence on appeal, which we will not do. *See Blasingame v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 71, at 6, 542 S.W.3d 873, 877. Others are new and cannot be used to reverse the circuit court's decision because they were not made below; therefore, she is barred from raising them now. *See Ark. Dep't of Health & Human Servs. v. Jones*, 97 Ark. App. 267, 274, 248 S.W.3d 507, 512 (2007).

We hold that Norris's counsel has adequately addressed the adverse rulings in this case and has complied with both the court rules and the *Linker-Flores* requirements for no-merit briefs. Therefore, we affirm the termination of Norris's parental rights, and we grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GLADWIN and WOOD, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

*Demarcus D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.