Cite as 2026 Ark. App. 247

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-25-793

| | |
|---|---|
| BREANNA TERRY<br><div align="right">APPELLANT</div><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><div align="right">APPELLEES</div> | **Opinion Delivered** April 22, 2026<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26JV-23-353]<br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**BRANDON J. HARRISON, Judge**

Breanna Terry appealed the Garland County Circuit Court's order terminating her parental rights to her younger child, MC2, born 23 October 2023. Her counsel moved to withdraw without completing a merits appeal because, as she explained in an accompanying no-merit brief, the appeal would be wholly frivolous. *See Linker-Flores v. Ark. Dep't of Hum. Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004); Ark. Sup. Ct. R. 6-9(j). We agree, grant counsel's motion to withdraw, and affirm.

Breanna has a cognitive deficit or developmental delay that affects her ability to retain information; she has a diagnosis of partial Down syndrome. When this case opened, she already had a history with the Arkansas Department of Human Services (the "Department" or "DHS"). The Department had opened a protective-services case in September 2022 involving MC1, who was about a year older than MC2, after it found that Breanna was not

providing food. The Department arranged in-home parenting classes and, as part of a safety plan, required Breanna to reside with her mother to provide support and guidance in caring for the baby. In July 2023, MC1 was placed in DHS custody for suspected abuse after Breanna and Austin McAbee, MC2's putative father, gave different accounts of how MC1 broke her femur.[1]

The Department received a hotline report for neglect of MC2 on 24 October 2023, when she was one day old. According to nursing staff at the hospital where Breanna delivered, Breanna and Austin were not feeding or diapering MC2 despite encouragement and several reminders. Because they were not feeding her at regular intervals, or not feeding her at all, MC2's glucose level became critically low on October 23 and 24. Hospital staff continued to instruct them when and how to feed the baby throughout the day and night of October 24, and still had to wake them twice to do it. They could not perform basic cleaning of MC2 or the bassinet despite instruction from staff the previous day.

In response to the hotline call, DHS searched for previous DHS cases involving Breanna or Austin. For Breanna, the search revealed the open protective-services case involving MC1 that had begun with a similar failure to provide food. For Austin, it revealed a "true" finding for sexual contact and sexual penetration of his developmentally delayed sister. A home assessment revealed that the presumed parents had no supply of formula and few other supplies for an infant. The home had water damage, poorly repaired flooring, and a wall with a hole in it.

---

[1]We affirm the termination of Breanna's parental rights to MC1 in a related appeal decided today, *Terry v. Arkansas Department of Human Services*, 2026 Ark. App. 249, ___ S.W.3d ___.

The Department petitioned October 31 to adjudicate MC2 dependent–neglected as a result of abuse, neglect, and parental unfitness. The court entered an ex parte order awarding temporary custody of MC2 to DHS the same day. On December 15, it entered an agreed order adjudicating MC2 dependent–neglected due to environmental neglect because Breanna and Austin lacked appropriate housing.

The court conducted a series of review hearings. At first the permanency plan was to reunite MC2 with a fit and proper parent or explore placement with fictive kin. Breanna made some progress with the case plan: she was receiving therapy and had completed parenting classes. But the progress did not last. After a 21 May 2025 review hearing, the court found she was not compliant with the case plan. She was not employed, had stopped attending therapy, and did not have appropriate housing. And what parenting education she received didn't take. A DHS caseworker explained at the termination hearing that Breanna "often needs concepts explained to her repeatedly and over and over" sometimes within one conversation. That continued "week after week, month after month." For whatever reason, she said, Breanna "is not able to retain any education as far as taking care of her children." The caseworker believed that had contributed to her neglect of MC2 at the hospital.

In October 2024, a Missouri man came forward contending he is the father of both children. DNA testing confirmed that in January 2025. The case went into a holding pattern by agreement of the parties while DHS and its Missouri counterpart assessed whether MC2 could be placed with him. An Interstate Compact for the Placement of Children (ICPC) request was denied; he and other residents of his home had disqualifying criminal

3

histories, and conditions in the home were unsanitary. The circuit court reported the ICPC denial in the May 2025 review order. In the same order, the court changed the case goal to adoption following the termination of parental rights. After a DHS employee informed the father of the custody denial, he stopped contacting her.

The Department petitioned in July 2025 to terminate Breanna's parental rights on the grounds that she had failed to remedy the conditions that caused MC2's removal, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2023), and subjected MC2 to aggravated circumstances in that there was little likelihood that continued services would result in successful reunification. *Id*. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)* & *(B)(i)*. The petition focused on the absence of any change to Breanna's situation since MC2 was removed from her custody. She had been unable to retain the skills acquired in parenting classes, still lacked transportation and stable employment, and still lacked stable and appropriate housing.

Before the 10 September 2025 termination hearing, Act 518's reorganization of the Juvenile Code took effect.[2] On 16 September 2025, the circuit court entered an order terminating Breanna's parental rights to MC2. It found clear and convincing evidence for the failure-to-remedy ground, Ark. Code Ann. § 9-35-325(b)(3)(B)(i)*(a)* (Supp. 2025), formerly section 9-27-341(b)(3)(B)(i). That ground required proof that (1) MC2 was adjudicated dependent-neglected, (2) MC2 continued out of Breanna's custody for twelve months, (3) Breanna failed to remedy the cause for the removal, and (4) Breanna failed

---

[2]*See* Act 518 of 2025. The Act reorganized the Juvenile Code but made no substantive change that would be relevant here. Indeed, the General Assembly's express intent was that the Act "shall make only technical, not substantive, changes to the Arkansas Code of 1987." *Id*. § 1(3).

despite meaningful efforts by the Department to rehabilitate her and correct the conditions that caused removal. Ark. Code Ann. § 9-35-325(b)(3)(B)(i)*(a)(1)*. The court highlighted evidence that

> [s]he has not completed any parenting classes since the removal of this child. Her participation in family time has been sporadic. And, her home is not appropriate for placement of a juvenile due to continuing concerns with domestic violence and the fact that a sex offender is living in the home.

It found that termination was in MC2's best interest after expressly considering the testimony about the number of families interested in adopting a child like MC2 or a sibling group like MC1 and MC2.

The termination decision was the only ruling adverse to Breanna. As withdrawing counsel has carefully demonstrated, the court's findings are supported by the record and caselaw. The first two elements of the failure-to-remedy ground are beyond dispute. The December 2023 dependency-neglect finding was by stipulation. MC2 was removed from Breanna's custody 25 October 2023 and—nearly two years later—had never returned. We could not second-guess the circuit court's reasonable-efforts findings before May 2025 because Breanna did not appeal them. *Morton v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 388, at 8, 465 S.W.3d 871, 876. The reasonableness of DHS's later efforts to remedy the conditions that caused removal is plain from the record. It referred Breanna to parenting education through two separate providers, but she was dismissed for excessive absences. She did not reengage in parenting education after the May 2025 review hearing. The Department offered in-person family time sessions and transportation to them, but Breanna declined.

That brings us to the fourth factor—Breanna's failure to remedy the conditions that caused removal. She and Austin moved several times during this case, both within and outside Arkansas—usually without telling DHS. Breanna joined and left the carnival at least twice. The moves meant she had never been able to complete parenting classes for MC2. When Breanna was traveling out of state, she was inconsistent with Zoom family-time visits. When she was in Arkansas, she often canceled visits "for arbitrary reasons such as rain" or because MC2 "had a cough last week and she was worried she would still have a cough." She declined DHS's offer to transport her to Garland County from Paragould for in-person visits because that would be too long to stay in the car. She was aware of the termination hearing but did not attend. She never obtained a stable job, completed therapy, or demonstrated the ability to retain parenting education.

She never demonstrated stable housing or a stable home life, either. Stable and appropriate housing is one of a child's most basic needs, and we have repeatedly held that failure to obtain it supports termination. *See Selsor v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 182, 516 S.W.3d 314. As of the termination hearing, Breanna and Austin were living with Austin's brother, who is a registered sex offender. She had told DHS that she and Austin had a trailer they could move into. But if they moved, the brother would be coming with them. Austin was in jail for domestic battery at the time. A caseworker testified that Breanna would "speak about Austin putting his hands on her or yelling at her, threatening her," then backtrack and say she was confused. During one family-time visit, a CASA worker had to call police because he and Breanna were screaming and fighting. The caseworker testified that DHS had done everything it reasonably could to reunify MC2 with

Breanna. In her view, termination was in MC1's and MC2's best interest because "they deserve a family that will choose them and spend time with them and desire a life with them."

On de novo review, we agree that clear and convincing evidence supported each element of the failure-to-remedy ground, and there could be no merit in a challenge to the court's finding that grounds for termination existed. *Campbell v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 37, 660 S.W.3d 585 (standard of review in no-merit termination-of-parental-rights cases). All that remains is the best-interest finding.

The Juvenile Code requires the circuit court to determine the child's best interest upon consideration of at least two factors: (1) the likelihood that the juvenile will be adopted; and (2) potential harm to the juvenile's health and safety caused by returning the child to the parent or continuing contact with the parent. Ark. Code Ann. § 9-35-325(b)(3)(A). Potential harm "must be viewed in broad terms, and 'potential' necessarily means that the court is required to look to future possibilities." *Bradley v. Ark. Dep't of Hum. Servs.*, 2026 Ark. App. 154, at 11, ___ S.W.3d, ___. The court is not required to find that actual harm would result or affirmatively identify a potential harm. *Id.* Clear and convincing evidence must support the conclusion that termination is in the child's best interest—not the individual statutory factors. *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661; *Renfro v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 419, 385 S.W.3d 285.

We require some evidence of adoptability. *Solee v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 640, 535 S.W.3d 687. There was some evidence: a DHS adoption specialist

testified there were 75 matches for MC1 and MC2 as a sibling group. For MC2 individually, there were 204. The specialist was aware of no barriers to adoption for either child.

We hold that the circuit court had sufficient evidence upon which to find that it was in MC2's best interest for Breanna's rights to be terminated and that a statutory ground for termination existed. Thus, we grant counsel's motion to withdraw and affirm the termination of parental rights.

Affirmed; motion to withdraw granted.

TUCKER and WOOD, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.

8