Cite as 2022 Ark. App. 197

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-21-582

| | | |
|---|---|---|
| | | Opinion Delivered May 4, 2022 |
| NICHOLAS MILLS | APPELLANT | APPEAL FROM THE YELL COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 75NJV-20-15] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | APPELLEES | HONORABLE TERRY SULLIVAN, JUDGE  AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Nicholas Mills appeals a Yell County Circuit Court order terminating his parental rights to his children, KM and LM.[1] On appeal, he challenges only the circuit court's best-interest finding, claiming the evidence showed that he had made significant and consistent progress during the pendency of the action, that his children were bonded to him, and that he was on a course to have a trial home placement. We affirm.

Ronni Partain and Nicholas Mills are the biological parents of KM and LM. On June 4, 2020, the children were removed from their physical and legal custody after the Dardanelle

---

[1]The parental rights of Ronni Partain, the children's biological mother, were also terminated. She is not a party to this appeal. As a result, this opinion will focus only on the facts and procedural history as they pertain to Mills.

Police Department received a hotline report that the children had been left at home unattended. While Partain was at home with the children and Mills was at work, a neighbor found three-year-old KM alone in a parking lot of their apartment building. KM was wet and covered in something sticky. Out of concern, the neighbor went to Partain and Mills's apartment, found the door open, and called out several times. She heard a baby crying but received no other response. She stepped inside and saw eleven-month-old LM on the bathroom floor covered in something soapy. The neighbor contacted 911, and  officers and paramedics were dispatched.

Officers on scene contacted Partain. She claimed that KM was supposed to be watched by a neighbor and that she had been taking a nap with LM. She claimed that LM must have wandered off while she was asleep and that she would never put her children in danger. Officers reported, however, that Partain was incoherent and struggling to focus, and her apartment was littered with dangerous items within reach of the children, including knives, bug spray, tools, medications, scissors, and window cleaner.[2]

Meanwhile, the paramedics found LM lethargic and almost unresponsive, and Partain was unable to advise them whether LM had ingested any chemicals or poison. He was rushed to the emergency room at Dardanelle Regional Medical Center. At the hospital, both Partain and Mills were administered drug tests. Partain tested positive for methamphetamine, amphetamine, THC, and benzodiazepine. Mills tested positive for THC, methamphetamine,

[2]Partain was arrested on the charge of endangering the welfare of a minor.

and amphetamine. As a result, the Arkansas Department of Human Services (Department) exercised a seventy-two-hour hold on the children and initiated dependency-neglect proceedings. The court subsequently adjudicated the children dependent-neglected due to parental unfitness as a result of Partain's and Mills's drug use, their failure to protect, and environmental neglect.[3]

Throughout the proceedings, the court monitored the services provided to Mills and his efforts at compliance. At the onset, the court set reunification as the goal of the case. In addition, the court ordered Mills to follow the case plan, maintain stable employment and housing, submit to a drug-and-alcohol assessment, remain drug-free, and submit to a psychological evaluation and participate in counseling.

The court conducted two review hearings to monitor the parties' compliance. At the first review hearing, the court concluded that Mills was not in compliance with the case plan in part because he had been unable to pass a drug screen on the day of the hearing. He was ordered to sign a HIPAA release and to complete a drug-and-alcohol assessment forthwith.

At the second review hearing, the court concluded that Mills had only minimally complied with the case plan. While he had finished his parenting classes, Mills had failed to comply with numerous orders. He did not have stable housing or employment; his license was suspended, and he did not have transportation; he had not completed his drug-and-alcohol assessment; and he had missed six visits with his children—three because Partain

---

[3]The adjudication hearing occurred in August 2020, but the order was not filed until November 3, 2020.

tested positive for COVID-19, and three were no-shows. While he had completed his psychological evaluation, Mills had been discharged from counseling with Counseling Associates and refused to return to River Valley Psychiatry, although he testified that he intended to return to counseling and had an appointment scheduled the next week. The court also noted that Mills had a long list of previous criminal charges and that his criminal history included having been on parole and an early termination from drug court. Perhaps of more significance, the court noted that Mills was currently facing charges of possession of drug paraphernalia and criminal trespass that had arisen since the initiation of the dependency-neglect proceeding. In light of this, the court found that Mills had not benefited from the services provided by the Department and had failed to regularly take advantage of the services offered.

The court subsequently conducted a permanency-planning hearing wherein it found that the parents' complete lack of progress in the case plan and towards rehabilitating their circumstances prevented a trial placement or return of custody and changed the goal of the case to termination of parental rights. As a result, the Department filed the petition to terminate parental rights.[4]

The court conducted a termination hearing in August 2021. After hearing the testimony and considering all the evidence before it, the circuit court entered an order

_____

[4]The petition alleged that termination was in the best interest of the children and cited six statutory grounds for termination. Because Mills does not challenge the sufficiency of the evidence concerning the statutory grounds, we will not recite the detailed allegation of grounds.

4

terminating Mills's parental rights. The court specifically found that the Department had proved all six statutory grounds alleged in the petition and that the children are adoptable. The court further found that the children would be subject to potential harm if returned to Mills's care and custody. In so finding, the court found that Mills had lived in several temporary locations throughout the case and had failed to obtain and maintain safe, stable, and appropriate housing; that he had completed his psychological evaluation and drug-and-alcohol assessments but had failed to follow through with recommended treatment and had tested positive for controlled substances; and that he had been terminated early from drug court and had garnered further criminal charges since the case's inception despite being on parole. As a result, the court concluded it was in the best interest of the children to terminate his parental rights.

Mills filed a timely notice of appeal from the termination order. He does not challenge the court's findings with respect to the statutory grounds nor does he challenge the court's finding regarding the adoptability of the children. Instead, he makes a broader claim that termination was not in the best interest of the children. He asserts that he had made significant and consistent progress toward reunification, his children were bonded to him, and he was on a course to have a trial home placement. In other words, he contends that the circuit court erred in finding that the children could potentially suffer harm if returned to his care.

We review termination-of-parental-rights cases de novo. *Heath v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 255, 576 S.W.3d 86. We review for clear error, and a finding is clearly

5

erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* A court may order termination of parental rights if it finds clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code, Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2021), and that termination is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). This best-interest determination includes consideration of the evidence supporting the specific grounds for termination. *Camarillo-Cox v. Ark. Dep't of Hum. Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005).

Mills claims that the court terminated his parental rights due to its skewed perspective of his progress throughout the case. He states that the court concluded that his progress was virtually nonexistent but that substantial evidence proves otherwise.

Mills highlights his visitation as an area in which the court exhibited a skewed perspective. Concerning visitation, the court heard testimony that Mills had completed seventy-six visits with his children and had canceled eighteen. Mills admits he missed approximately eighteen visits but argues that the record reflects that the missed visits were canceled due to circumstances beyond his control. He also notes that he attended seventy-six lengthy visits with his children, that he was appropriate with them, and that his children clearly had bonded with him. According to Mills, his visits with the children weighed in

6

favor of preserving his parental rights, not termination, and the court should not have relied on the missed visits to support its decision to terminate.

Mills also contends that the court exhibited a skewed perspective concerning his progress. While he admits that he struggled in the beginning of the case, he claims that his struggles did not negatively impact his parenting. He contends that by the time of termination, the evidence reflected his stability. In addition to his strong bond with the children, he had improved his housing situation. In his testimony, he admitted that had moved three or four times since the case was opened but reported current stable housing— he was living in an apartment leased in his sister-in-law's name. As further evidence of his stability, he points to his intent to separate from Partain[5] and his steady and stable employment.

In addition, Mills disagrees with the court's findings concerning his compliance with sobriety and court-ordered counseling. Concerning sobriety, the court heard evidence that the children were removed from the home in June 2020 due, in part, to his drug usage. As a result, the court ordered a drug-and-alcohol assessment. Mills contends that he completed this assessment, which we acknowledge is correct. The court, however, received evidence that Mills tested positive for methamphetamine in April and May, eleven months after the children had been taken into the custody of the Department, and that subsequent to removal, an incident occurred in which another child had been found surrounded by drug

---

[5]Despite Mills's asserted intention to separate from Partain, she testified that they were married and that she intended to stay married to him.

7

paraphernalia in a home shared by Partain and Mills. As a result of this incident, Mills received a felony charge. Nonetheless, Mills argues that he had achieved sobriety for three months prior to the termination hearing and was attempting to resolve his criminal issues.

Concerning his court-ordered counseling, Mills argues that he completed a psychological evaluation, which supports his claim that he is able to parent, and that he was engaged in counseling. The court, however, heard evidence that Mills had not completed counseling. While he had received three different referrals for counseling, his participation in individual and group counseling was sporadic; he had been discharged from one program as a result; and he had not resumed counseling as of the date of the termination hearing.

While he admits that much of his progress had occurred rapidly near the end of the case, he claims that the evidence showed he had made significant progress and was in a position to regain custody of his children or at least begin a trial placement in the near future. He claims that the court's decision to terminate his parental rights smacks more of punishment for his past behavior than consideration of his current and future ability to parent his children. For the following reasons, we disagree.

Essentially, Mills is asking this court to reevaluate and reweigh the evidence and arrive at an outcome different from that of the circuit court. It is well settled that this court will not reweigh the quality of the evidence or credibility of witnesses. *Chaffin v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251.

Additionally, we conclude that there was sufficient evidence to support the circuit court's best-interest finding. We have consistently held that a circuit court's statutory-

8

grounds findings are relevant to, and can constitute evidence of, the potential harm the children would face if returned to the parent's custody. *Taylor v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 264 (finding that the same evidence that supported statutory grounds supported the potential-harm prong of the best-interest finding). Here, the circuit court found that the children were removed due to Mills's unfitness and that Mills had failed to remedy the conditions that caused removal. Despite the offer of services, the circuit court found that he had failed to obtain and maintain safe, stable, and appropriate housing and had not completed all the services recommended for reunification. Mills does not dispute these findings made by the court as to grounds; thus, the factual findings supporting those grounds are unchallenged on appeal and may inform this court's review of the circuit court's best-interest finding. *Phillips v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 383, at 16, 585 S.W.3d 703, 711 (affirming the circuit court's best-interest decision where none of the statutory-grounds findings were challenged); *see also Taylor v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 264, at 13 (holding that because the parent never appealed any of the circuit court's findings that return to the parent's custody would be contrary to the child's welfare, those findings were "conclusively established"). Likewise, the court also concluded that there was little likelihood that further services would lead to successful reunification, and Mills has not challenged that finding either.

Finally, it is well established that in termination cases, the court must also consider the children's need for stability and permanency. "The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to

return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective." *Villaros v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 399, at 5, 500 S.W.3d 763, 766 (citing Ark. Code Ann. § 9-27-341(a)(3)).

Here, at best, Mills argues that he was almost to the point of being able to regain custody or at least begin a trial placement with his children. In other words, he had only recently begun to fully comply with the case plan and to strive for sobriety and stability. We have consistently held that evidence presented at a termination hearing that shows the parents are making overtures and engaging in last-minute efforts toward participating in the case plan while termination is looming is an insufficient reason to not terminate parental rights. Ark. Code Ann. § 9-27-341(a)(4)(A); *Bean v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 77, 513 S.W.3d 859; *Wilson v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 666, 476 S.W.3d 816. Furthermore, the court had evidence of Mills's criminal history and of his pending charges for possession of drug paraphernalia and trespass. Clearly, the children need stability, and it was unclear when Mills would be in a position to parent the children or to provide that needed stability.[6]

For these reasons, we affirm.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

---

[6]In fact, during the termination hearing, the court was advised that a warrant had been issued for Mills, and the court commented that Mills might be headed to jail that day.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.