Cite as 2026 Ark. App. 36

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-25-37

| | |
|---|---|
| JACQULIN BUTLER<br><br>APPELLANT<br><br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered January 21, 2026<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-23-231]<br><br><br>HONORABLE ANNIE POWELL HENDRICKS, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**ROBERT J. GLADWIN, Judge**

Appellant Jacqulin Butler timely appealed the Sebastian County Circuit Court's order terminating her parental rights to her minor children, MC1 and MC2. Butler's counsel filed a motion to withdraw and a no-merit brief pursuant to our rules and case law stating that there are no meritorious grounds to support an appeal. Ark. Sup. Ct. R. 6-9 (2025); *Linker-Flores v. Ark. Dep't of Hum. Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004). Our court clerk mailed certified copies of counsel's motion and brief to Butler's last-known address informing her of her right to file pro se points for reversal. Butler did not file pro se points; accordingly, the Arkansas Department of Human Services ("DHS") has not filed a brief. We affirm and grant the motion to withdraw as counsel.

I. *Background Facts*

A protective-services case for MC1 and MC2 was opened with DHS on October 26, 2022, for inadequate supervision and drug use. DHS referred Butler and her live-in boyfriend, Charles Smith, for a drug-and-alcohol assessment and related classes and performed several home visits. During the visits, Butler and Charles were drug screened with negative results; however, the drug screens were sent for laboratory confirmation, and those results were positive for methamphetamine. DHS referred Butler to additional services in April 2023. Charles and Butler attended only one drug-and-alcohol session in April, and Butler had a positive drug screen for methamphetamine and amphetamines. In May, Butler had a positive drug screen for methamphetamine and buprenorphine, and Charles had two positive drug screens for THC and methamphetamine.

On May 8, DHS implemented a safety plan that required Butler to remain in the home with her neighbor to adequately supervise MC1 and MC2 until a team decision-making meeting could be held. The meeting was held on May 10. Charles reported that he smoked THC in his car but denied using methamphetamine. Butler admitted using methamphetamine in the past and taking "Roxy" for a headache but denied that she currently used methamphetamine or smoked THC.

Due to the history of the family, including consistent drug use and noncompliance, DHS filed a petition for dependency-neglect on May 17; at the time, MC1 was seventeen years old and MC2 was two. DHS filed an amended petition on May 24 alleging that the minor children were dependent-neglected as a result of "abuse, neglect, or parental

unfitness." At the request of the attorney ad litem, an emergency hearing was held on May 31. The circuit court found that, although the neighbor had agreed to check on the family, more supervision was needed given Butler's positive drug screens. The circuit court further found that emergency conditions necessitated the removal of the children and ordered them into the custody of DHS. The court ordered both Butler and Charles to submit to hair-follicle drug testing and set an adjudication hearing for June 28.

On September 30, the circuit court entered an adjudication order finding the minor children dependent-neglected on the basis of parental unfitness due to substance abuse. The goal was set as reunification with Butler, and both Butler and Charles were ordered to comply with the case plan; submit to drug-and-alcohol assessments and complete any recommended treatment; attend parenting classes; attend counseling; and obtain and maintain stable housing, employment, income, and transportation.

A review hearing was held on November 29. At this time, Butler had completed parenting classes, a drug-and-alcohol assessment, and counseling. She had also submitted to urine drug screens, but the urine consistently did not present at the proper temperature. Charles had not worked the case plan, and Butler reported they were no longer together. Charles was ordered to have no contact with MC1 and MC2. The goal of the case continued as reunification.

A permanency-planning hearing was held on May 8, 2024. The court found that although there were some services completed in Butler's plan that showed significant progress, she still had many obstacles to overcome. Butler had completed parenting classes,

a drug-and-alcohol assessment, and counseling. However, she had not completed drug treatment. She never went into residential treatment, despite the referral made on November 29, 2023, following her positive hair-follicle test for methamphetamine.

Butler was also admittedly living with Charles again, who the court noted had not made himself available to DHS for services and was arrested at Butler's residence during the review period. Butler had also been difficult for DHS to reach during the review period and could not verify employment with paystubs. Accordingly, the court ordered Butler to provide DHS with her paystub, present a copy of her prescriptions to DHS, and sign a release of information for DHS to access her medical records. Butler was also ordered to complete another drug-and-alcohol assessment and comply with any recommended treatment. Charles was ordered to work the case plan as long as he and Butler continued to live together. The goal of the case remained reunification with a concurrent goal of another planned permanent living arrangement ("APPLA") for MC1 and a concurrent goal of adoption following termination of parental rights for MC2.

DHS filed a petition for termination of parental rights as to MC2 on July 14, 2024, alleging three grounds in support of its petition for termination: (1) the juvenile had been out of the home for twelve months with the parent having failed to remedy the reason for removal; (2) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate the placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare, and the parent had manifested an incapacity or indifference to remedy those subsequent factors; and (3) that the parent

4

subjected the juvenile to aggravated circumstances with little likelihood of successful reunification despite services being provided.

The termination hearing was held on August 21, 2024. DHS's only witness was family-service worker Kristen Hill, who had been assigned as the caseworker for the family since July 2023. She testified that DHS offered Butler parenting classes, counseling services, drug-and-alcohol assessment, and bus passes. Butler completed her parenting class, her first drug-and-alcohol assessment, and her counseling in October 2023 as part of her treatment; however, she had a positive hair-follicle test for amphetamines and methamphetamine on November 13, 2023. Hill testified that DHS made a referral for residential drug treatment on November 23, 2023, but Butler elected not to go to an inpatient facility at the time. Butler also had a positive hair-follicle test for methamphetamine on May 14, 2024, and DHS referred her for a new drug-and-alcohol assessment; she completed the prescreen on May 17 but failed to attend the in-person assessment on May 20. On June 4, she rescheduled the assessment but then failed to attend on June 7. On July 15, she completed the drug assessment. However, on July 30, she canceled her appointment, and on August 6, Butler failed to attend her subsequent treatment.

Butler testified on her own behalf. She testified that the last time she and Charles lived together was around May 2024. She alleged that after an argument, Charles took her phone and broke it, so she did not have a phone for a while. Butler testified about her employment history but could not remember when she was cleaning apartments. She said she gave DHS a statement from her manager. She did not remember when she worked at

Burlington Coat Factory. She had been working at Family Dollar since June or July 2024 and worked between thirty-two and forty hours a week. She was unsure of her average pay and could not explain why she failed to give DHS proof of her employment.

Butler testified that she completed her first drug-and-alcohol assessment and that DHS did not recommend that she attend inpatient drug treatment but merely mentioned that it was a possibility. She could not remember the last time she had used an illegal substance. She testified that she completed her co-occurring treatment in October 2023 but was unsure when she started using methamphetamine again. She acknowledged that she had tested positive for methamphetamine on a hair-follicle test in May 2024 and had tested positive for amphetamines when she submitted to her drug-and-alcohol assessment in July 2024. Butler testified that she was presently clean and would not test positive for illegal substances—she was drug screened during the hearing with negative results. Butler testified that she had started going back to Western Arkansas Counseling and Guidance Center for treatment the Monday before the termination hearing. She acknowledged that she had missed some appointments and explained that she had just started working at Family Dollar when she was scheduling those appointments, and she missed them because she didn't want to lose her job.

The attorney ad litem called MC1 to testify. MC1 testified that Butler and Charles were messaging each other on and off through his Facebook account from March 26, 2024, through August 8, 2024, and that they had calls on May 8, May 13, July 5, and July 11. MC1 also testified that Butler's "phone situation" was a lie because she was texting him all the

6

time; therefore, she could have messaged her caseworker. MC1 testified that he was placed with MC2 and that MC2 was doing very well.

At the close of all the testimony and evidence, the circuit court granted DHS's petition and terminated Butler's parental rights. The termination order was subsequently entered on October 24, 2024. Butler filed a timely notice of appeal on November 13, 2024. Her appellate counsel filed a motion to withdraw and a no-merit brief; this appeal followed.

## II. *Standard of Review*

This court reviews termination-of-parental-rights cases de novo. *Roland v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 333, 552 S.W.3d 443. An order terminating parental rights must be based on a finding by clear and convincing evidence that the sought-after termination is in the children's best interest. *Id.* The circuit court must consider the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm that could be caused if the children are returned to a parent. *Id.* The circuit court must also find that one of the grounds stated in the termination statute is satisfied. *Id.*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. The petition must include an argument section that lists all adverse rulings that the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. *Id.*; *see also* Ark. Sup. Ct. R. 6-9(j)(1)(A).

III. *Discussion*

In her no-merit brief, Butler's appellate counsel asserts that after a conscientious review of the record, she has determined that there are no issues of arguable merit for appeal. Counsel identified the failure-to-remedy ground as having the least potential for arguable merit. Because only one ground is needed for termination, she correctly maintains that any argument regarding the remaining grounds are moot. *See, e.g.*, *Westbrook v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 352, 584 S.W.3d 258. The failure-to-remedy ground allows for termination when a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve months, and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2023). With respect to the failure-to-remedy ground, the circuit court stated, in part, as follows:

> The Court finds that the mother has dodged multiple drug screen attempts by the Department, and the drug screens she has completed have been positive for methamphetamine. She has had multiple phone numbers and has had inconsistent contact with the Department. She has not remedied the issues that caused removal.

Counsel argues that Butler undoubtedly failed to remedy her ongoing drug use throughout the case despite DHS's offer of services including a drug-and-alcohol assessment, drug treatment, random drug screens, and continued monitoring of Butler's home. We agree. The record is replete with noncompliance regarding Butler's continued drug use and positive drug tests for various substances—specifically, methamphetamine—as well as her admitted

8

refusal to attend residential drug treatment. Finally, at the time of the termination hearing, MC2 had been out of Butler's custody for approximately fifteen months. Therefore, we agree with counsel that no meritorious argument can be made that the circuit court erred in terminating Butler's parental rights on this statutory ground.

In addition to finding the existence of at least one statutory ground in order to terminate parental rights, a court must also find that termination of parental interest is in the child's best interest, taking into consideration two statutory factors: (1) the likelihood of adoption if parental rights are terminated and (2) the potential harm caused by continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Here, the court considered both statutory factors in light of the overall evidence, finding that termination was in MC2's best interest. Counsel contends that there are no issues of arguable merit for reversal in challenging this best-interest finding. We agree.

Regarding adoptability, the circuit court heard testimony from the family-service worker that MC2 is adoptable and that MC2's current placement desired to adopt him. DHS also did a data match for MC2 that resulted in 331 potential matching families. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *See Strickland v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 608, 567 S.W.3d 870.

Regarding potential harm, the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Ross v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 503, 529 S.W.3d 692. Potential harm must be viewed in broad terms, and "potential" necessarily means that the court is required to look to future possibilities. *Id.* This

9

court has frequently held that continued drug use and instability demonstrate potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case. *Beaird v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 415, 585 S.W.3d 172; *Murphy v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 426, 560 S.W.3d 465; *Robinson v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 262, 520 S.W.3d 322.

Finally, counsel notes that, other than the termination decision itself, she has reviewed the record for all adverse rulings to Butler made by the circuit court on all objections, motions, and requests made at the termination hearing. First, Butler objected to the relevance of the caseworker's testimony regarding the protective-services case that led to DHS's filing the dependency-neglect petition. The circuit court overruled the objection and allowed the testimony. Counsel argues that this ruling does not provide a meritorious basis for appeal because the testimony was relevant to Butler's drug use, which was the cause of removal, and one of the elements DHS was required to prove was that Butler failed to remedy the cause of removal. We agree. This court has held that a parent's history with DHS is relevant in a dependency-neglect proceeding. *See Brown v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 725, 478 S.W.3d 272.

Next, testimony was elicited from MC1 regarding conversations between Butler and Charles that were occurring on MC1's Facebook account. Butler objected that the testimony was hearsay. The circuit court sustained the objection, in part, ruling that no statements by Charles would be admitted, but it overruled the objection as to Butler's statements. Counsel maintains that this adverse ruling does not provide a meritorious basis for appeal because a

statement is not hearsay if it is offered against a party and is her own statement. Ark. R. Evid. 801(d)(2) (2025). We agree. Furthermore, counsel is correct that neither of these adverse rulings resulted in prejudice to Butler—even if they had been made in error—because there was sufficient evidence to support the circuit court's termination order without the testimony that elicited the objections. Thus, any alleged error would be harmless.

Finally, as discussed by counsel, the only remaining adverse ruling was the termination itself, which operated as a denial of Butler's requests for additional time to prove her sobriety. We agree that there is no meritorious basis for appeal of the court's refusal to allow Butler additional time. Partial compliance with a case plan does not justify reversal if the parent continues to make decisions adverse to the child, such as abusing illegal drugs and testing positive for drug use. *Hollinger v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 458, 529 S.W.3d 242. A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, 585 S.W.3d 725.

## IV. *Conclusion*

Having carefully examined the record and the no-merit brief, we hold that Butler's counsel has complied with the requirements for a no-merit termination-of-parental-rights appeal and that the appeal is wholly without merit. Accordingly, we grant counsel's motion to withdraw and affirm the termination order.

Affirmed; motion to withdraw granted.

KLAPPENBACH, C.J., and BROWN, J., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.