Cite as 2026 Ark. App. 87

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-25-415

| | |
|---|---|
| ANDREA MONTOYA<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered February 11, 2026<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-23-665]<br><br>HONORABLE DIANE WARREN, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## ROBERT J. GLADWIN, Judge

Appellant Andrea Montoya appeals the Washington County Circuit Court's order terminating her parental rights to her minor child, MC. Montoya's counsel has filed a motion to withdraw and a no-merit brief pursuant to our rules and case law stating that there are no meritorious grounds to support an appeal. Ark. Sup. Ct. R. 6-9 (2025); *Linker-Flores v. Ark. Dep't of Hum. Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004). After our court clerk mailed certified copies of counsel's motion and brief to Montoya's last-known address informing her of her right to file pro se points for reversal, she filed pro se points; however, they were not timely filed. The clerk sent Montoya a letter notifying her that her pro se points had not been accepted and informing her that she had the opportunity to file a motion asking this court to accept her untimely pro se points for reversal. Montoya did not file that

motion; accordingly, the Arkansas Department of Human Services ("ADHS") has not filed a responsive brief. We affirm the termination and grant counsel's motion to withdraw.

I. *Background Facts*

On November 3, 2023, ADHS was contacted by the Springdale Police Department, which was actively attempting to provide crisis-intervention services to Montoya due to her mental-health status. Montoya was talking about spirits and demons and did not have the capacity to safely supervise and care for then five-year-old MC. After she became confrontational with officers. Montoya was admitted to Northwest Medical Center–Springdale for further psychological evaluation, which left MC without a caretaker. ADHS placed a seventy-two-hour hold on MC.

A meeting was held on November 7, at which time Montoya admitted that she was on a psychiatric hold with an unknown release date. Montoya also acknowledged that she used methamphetamine daily, that she did not have stable housing or employment, and that she was in a domestic-violence relationship with Sean White, with whom she resided. On November 8, ADHS filed a petition for emergency custody and dependency-neglect of MC. An ex parte order for emergency custody was issued on November 9.

ADHS filed an amended petition for emergency custody and dependency-neglect on November 14. ADHS alleged that MC was dependent-neglected as a result of neglect and parental unfitness due to Montoya's mental-health issues, her daily methamphetamine use, and her lack of stable housing or employment.

Montoya did not appear for the November 14 probable-cause hearing. The circuit court found that probable cause existed at the time of MC's removal and that the emergency conditions that necessitated MC's removal continued to exist.

Montoya likewise did not appear at the adjudication hearing, which was held on December 5. MC was found dependent-neglected due to neglect and parental unfitness. The goal of the case was established as reunification with a concurrent goal of adoption. The court ordered that visitation would be at the discretion of ADHS and that, if Montoya was dissatisfied with visitation, she could request a return to court over that issue. Montoya was ordered to comply with the case plan and orders of the court.

Montoya was present for the April 2, 2025 review hearing. The court found that ADHS had complied with the case plan and orders of the court and had provided, referred, or otherwise offered services, including drug-and-alcohol assessment, individual counseling, psychological evaluation, parenting classes, random drug screens, supervised family time, and case-management services. It also found that Montoya had minimally complied with the case plan and orders of the court. Montoya had just recently begun participating in the case and in some services, but she had not completed her parenting classes, a drug-and-alcohol assessment, or a psychological evaluation; and she had not participated in counseling. She had neither stable housing nor sufficient employment to meet the needs of herself or MC, had not demonstrated mental-health stability, and had unresolved criminal issues that had arisen after MC entered ADHS care. The court found that Montoya's mother had been assessed as a possible placement option for MC but had been denied approval. Montoya was

3

awarded supervised visitation with MC under the condition that her partner, White, was prohibited from participating in the visits. The court warned Montoya that she had to be consistent in her visits with MC and noted that ADHS was authorized to suspend visitation if she was not. The court continued the goal of the case as reunification with a concurrent goal of adoption.

A second review hearing was held on July 9, Montoya did not appear and was found not in compliance with the case plan or orders of the court because she had not completed parenting classes, a drug-and-alcohol assessment, a psychological evaluation, or counseling. Montoya had been in and out of jail and had not had contact with ADHS since her last release from jail. The court suspended visitation between Montoya and MC.

On September 12, Montoya moved to reinstate visitation, asserting that she had graduated from Eagle Crest Rehabilitation on September 5 and was residing in a women's sober-living community. The attorney ad litem filed a response on September 20 alleging that it would not be in MC's best interest to reinstate visitation because Montoya was not in compliance with the case plan, had not completed her court-ordered services, and had exercised only two supervised visits with MC since November 14.

A permanency-planning hearing was held on October 15. Montoya had been to residential treatment and then a halfway house, but she had relapsed and had not participated in any ongoing treatment or support groups since. She did not have a residence of her own and had not visited MC in several months. The court found that Montoya could not function independently of methamphetamine use and had no stable housing or

employment. Montoya was not in compliance with the case plan and orders of the court—she had not completed parenting classes, had not completed an updated drug-and-alcohol assessment since her relapse, had not completed her psychological evaluation, and had not consistently participated in random drug screens. She had also been in and out of jail. The court found that Montoya had not made significant and measurable progress toward rehabilitating the conditions that caused removal. The goal of the case was changed to adoption. The court denied Montoya's petition to reinstate visitation but authorized the parties to agree to the resumption of visitation if Montoya was able to demonstrate that she had re-established her sobriety.

On January 10, 2025, ADHS filed its petition for the termination of parental rights ("TPR"). ADHS alleged six statutory grounds in support of its TPR petition: (1) MC had been out of Montoya's custody for twelve months with Montoya having failed to remedy the cause for removal; (2) MC had been out of the home of a noncustodial parent for twelve months with the parent having failed to remedy the cause for removal; (3) MC had lived outside of the home of the parent for twelve months and the parent had willfully failed to provide significant material support for MC or to maintain meaningful contact with MC; (4) the parents had abandoned MC; (5) after the filing of the petition for dependency-neglect, other factors or issues arose that demonstrate the placement of MC in the custody of Montoya is contrary to MC's health, safety, or welfare and that Montoya had manifested an incapacity or indifference to remedy those subsequent factors; and (6) Montoya subjected

5

MC to aggravated circumstances, meaning there was little likelihood that services would result in a successful reunification.

The TPR hearing commenced on March 31, 2025. At the outset, ADHS introduced without objection its first eleven exhibits consisting of certified documents from the proceeding, including prior orders and evidence reflecting service.

Tammy Kelly, the ADHS family service worker assigned to the case, testified first. She noted that MC was now six years old and had come into the care of ADHS in November 2023 due to Montoya's mental-health and substance-abuse issues. MC was adjudicated dependent-neglected on the basis of those facts and circumstances. The court approved the case plan developed for Montoya, and services were offered to Montoya as a requirement of that case plan. ADHS's court report was introduced as ADHS's exhibit 12, and the case plan was introduced as the ADHS's exhibit 13, both without objection. The services outlined in the case plan were designed to address the initial reasons that MC had come into care.

Kelly noted that Montoya's visits with MC had been suspended by the court. Before her visits were suspended, Montoya had only two visits with MC: on March 21 and March 29, 2024. MC asked to end the visit early on March 21. During the March 29 visit, MC had become upset after Montoya talked about having White participate in the visits. MC had an accident in his pants, which was unusual for him. Montoya also went to the restroom and suddenly began acting differently during the remainder of the family time. The visits were upsetting to MC.

Kelly testified that Montoya had been participating in individual counseling but had not provided verification of her counseling. She had provided verification of having completed six hours of parenting classes. She had participated in residential treatment in August 2024 and completed it in September 2025. She had not maintained sobriety after she was released from residential treatment, testing positive for methamphetamine and amphetamines on October 11, 2024.

The first drug screen that Montoya had completed for ADHS was in March 2024. She had completed two drug screens in March and then she did not complete another until she got out of inpatient treatment in September 2024. She had taken four drug screens in September that were negative, and then she had taken one drug screen in October that was positive for methamphetamine and amphetamines. She stopped taking drug screens when she tested positive in October and had not restarted them until January 24, 2025. She had taken seven drug screens between January 24 and March 20, 2025, and had tested negative during that time. And although ADHS had referred Montoya for a psychological evaluation, she had not completed it.

Kelly explained that Montoya lived in Rogers in a residence she had moved into toward the end of February 2025. The residence had only one bedroom, but it was clean. Before that, she had been living with a friend for several months, and before that, she had no stable housing.

Montoya had been arrested three times since the case had been opened. She was arrested on December 23, 2023, for violating a no-contact order and assault involving White.

She remained in jail until January 10, 2024. She was arrested on January 20, again for issues involving White, and was released on January 30. She was arrested for a third time on April 10 for a failure-to-appear warrant and violation of conditions of release and was released on May 25.

Kelly confirmed that ADHS had investigated a family placement option with Montoya's mother, but her home was denied twice.

Kelly noted that MC had some behavioral issues in school but seemed to be doing great in the foster home. Kelly testified that MC did not have any impediments to adoption; any special needs; or any significant medical, physical, or emotional needs that might prevent adoption. She opined that MC is adoptable.

Kelly testified that Montoya had not remedied the circumstances that brought MC into ADHS's custody. Her visitation had been suspended for almost a year, and she had not provided any type of support for MC. ADHS had concerns about the health and safety and the potential harm to MC if he were to be placed with Montoya. Montoya's mental-health issues had not been addressed, and there were concerns about a possible relapse because she had relapsed after leaving inpatient treatment. Kelly concluded that TPR would clear the path to permanency for MC and would be in his best interest.

Montoya testified on her own behalf at the TPR hearing. She stated that she had been living in an apartment in Rogers since the end of February. She had been working since February 29, 2025. She requested three additional months to work on getting MC returned to her. Montoya testified that she was working, attending Childcare Aware classes, and

attending counseling through Eustasis. She stated that she had gone in for a psychological evaluation with Eustasis and signed a consent for her records to be released, but she had not been able to get those yet. She noted that in total, she had completed five and a half hours of parenting classes, an additional coparenting class, and four hours of anger-management classes. All of the classes she had completed had been done since January 2025.

Montoya admitted that she started off slowly in attempting to get MC back and that she did not have her priorities in order. She confirmed that she was too wrapped up in her own grief and battling her own flaws that she was not focused on MC's battles. She noted that she still has a lot of work that needs to be done because she was learning to care for herself. When she became a mother, she did not realize it was such a dangerous, hard job to defend and protect and provide for her child. She testified that she went into motherhood expecting her child to love her unconditionally and not vice versa. She claimed to have good intentions but acknowledged that she still was not ready to be a good mother. She hoped that with a few more months she might be ready, but at this time she was not ready to provide a home for MC.

Montoya acknowledged that she had previous diagnoses of borderline personality disorder, bipolar disorder, and schizophrenia. She had previously taken prescription medication but said she was doing much better without the medications, so she was not on any mental-health medications as of the time of the TPR hearing. She noted that she went in for a psychological evaluation the week before the hearing, but she did not have access to her mental-health records. She stated that she believed her mental health had improved. She

no longer blamed others for her shortcomings and no longer expected others to clean up her messes or fix her mistakes. She believed she could get where she wanted to be in order to have MC within ninety days.

Montoya acknowledged that she had pending criminal charges involving a domestic dispute with White. She conceded that she and White were still in contact and that he was one of her only points of support.

Brittany Ann Kaiser, MC's foster mother, testified as the attorney ad litem's sole witness. She testified about her experience with MC while he had been in her care for the past year. Kaiser testified that MC was doing well in school; he was testing well. She noted that he had some behavioral issues in school, but that she believed MC is adoptable.

At the close of all the testimony and evidence, the circuit court granted ADHS's petition and terminated Montoya's parental rights. The termination order was subsequently entered on April 28, 2025. Montoya obtained an order of indigency for appeal and filed a timely notice of appeal on May 2. Her appellate counsel filed a motion to withdraw and a no-merit brief; this appeal followed.

## II. *Standard of Review*

This court reviews termination-of-parental-rights cases de novo. *Butler v. Ark. Dep't of Hum. Servs.*, 2026 Ark. App. 36. An order terminating parental rights must be based on a finding by clear and convincing evidence that the sought-after termination is in the child's best interest. *Id.* The circuit court must consider the likelihood that the child will be adopted if the parent's rights are terminated and the potential harm that could be caused if the child

10

is returned to a parent. *Id.* The circuit court must also find that one of the grounds stated in the termination statute is satisfied. *Id.*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. The petition must include an argument section that lists all adverse rulings that the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. *Id.*; *see also* Ark. Sup. Ct. R. 6-9(j)(1)(A).

### III. *Discussion*

In her no-merit brief, Montoya's appellate counsel asserts that after a conscientious review of the record, she has determined that there are no issues of arguable merit for appeal. Counsel identified the failure-to-remedy ground as having the least potential for arguable merit. Because only one ground is needed for termination, she correctly maintains that any argument regarding the remaining grounds is moot. *See, e.g., Westbrook v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 352, 584 S.W.3d 258. The failure-to-remedy ground allows for termination when a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve months, and despite a meaningful effort by ADHS to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Ark. Code Ann. **§** 9-27-

11

341(b)(3)(B)(i)(*a*) (Supp. 2023). With respect to the failure-to-remedy ground, the circuit court stated, in part, as follows:

> A lack of stability in mental health and substance abuse were primary issues that resulted in the juvenile coming into the custody of the Department in November of 2023 and those issues continue to exist today. Andrea Montoya has failed to participate in the necessary services designed to rehabilitate the conditions that caused removal of her child from her home.

This ground requires that four findings be proved by clear and convincing evidence: (1) MC was adjudicated dependent-neglected; (2) MC had been out of the custody of Montoya for twelve months; (3) Montoya failed to remedy the cause of the removal; and (4) the failure occurred despite meaningful efforts by ADHS to rehabilitate the parent and correct the conditions that caused removal. *Selsor v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 182, 516 S.W.3d 314; Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*).

The first and second elements clearly have been satisfied. The adjudication order was entered as an exhibit without objection showing that MC was adjudicated dependent-neglected by order filed January 19, 2024. The probable-cause order, which was also entered as an exhibit, indicated that MC was removed from Montoya's custody on November 5, 2023, with an ex parte emergency order placing custody of MC with ADHS on November 9. The adjudication order, review orders, and permanency-planning order all reflected that custody of MC had remained with ADHS since that time. MC had been out of Montoya's custody for approximately sixteen months.

The third element required a finding that Montoya failed to remedy the cause of MC's removal. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*). The primary condition that

12

precipitated MC's removal from Montoya's custody was Montoya's mental-health issues. When ADHS first exercised a hold on MC, Montoya was being placed on a psychiatric hold after having a psychotic episode in which she was talking about spirits and demons and told officers that she would not do anything to hurt MC but that "there is darkness" where she takes him. During a team decision meeting, Montoya said that the discharge date from her psychiatric hold was unknown, and she further admitted daily use of methamphetamine and instability in her housing and employment. MC was adjudicated dependent-neglected because of neglect and parental unfitness due to these issues.

Here, Montoya undoubtedly failed to remedy these ongoing issues. Despite her admission that she had previously been diagnosed with borderline personality disorder, bipolar disorder, and schizophrenia, Montoya failed to complete her psychological evaluation so that treatment for her mental-health issues could even begin. This was an essential element of Montoya's case plan. Montoya also admitted that she had been prescribed medications for her mental-health diagnoses but was not currently taking any of those medications. Montoya claimed that she had submitted to a psychological evaluation with another provider "the week before last" but offered no proof of its completion. Even if it had been completed immediately before the TPR hearing as Montoya testified, there was no time for Montoya to follow any recommended treatment plan that would have inevitably been included in the evaluation. Determining a course of treatment is the entire purpose of having a psychological evaluation completed. Without the evaluation, there were no services to facilitate a remedy. Similar circumstances have been upheld by this court as evidence

sufficient to support TPR. *See Smallwood v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 598, 598 S.W.3d 253.

It was also unclear if Montoya had remedied her ongoing substance-abuse issues. Although she completed inpatient substance-abuse treatment at Eagle Crest Recovery on September 5, 2024, she then tested positive for methamphetamine and amphetamines on October 11. She failed to submit to any drug screens after testing positive until the end of January 2025. She provided negative drug screens from January 24 through March 20, 2025, but that constitutes only approximately two months of sobriety with no evidence of any ongoing substance-abuse treatment or a support system in place to help prevent a potential relapse. Showing some progress on a substance-abuse issue does not prove the capacity to remain drug-free. *See Hollinger v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 458, 529 S.W.3d 242.

Finally, Montoya had not remedied the instability in her housing or employment. Each of the prior court orders stated that Montoya had never maintained stable housing or employment throughout the case. At the time of the TPR hearing, Montoya had just moved into an apartment and had secured employment only weeks before. Montoya's inability to secure stable housing is a sufficient basis on its own to show she failed to remedy the cause of removal. *See Selsor, supra.*

Even considering all the improvements Montoya attempted to make in the two months leading up to the TPR hearing—taking parenting classes, completing a four-hour anger-management class, submitting to an independent psychological evaluation, obtaining

14

housing and employment, and testing negative for all substances—Montoya herself admitted that she was still not ready to be a good mother to MC or provide a home for him. Montoya testified that she hoped an additional ninety days would give her enough time to be ready to have MC returned to her, but the court was not required to consider her eleventh-hour improvements or give her more time on the basis of a mere hope that she might be able to remedy her situation, especially when the evidence supporting TPR sufficiently demonstrated her failure to comply and remedy her issues. *See, e.g., Mills v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 197, 644 S.W.3d 256. The evidence before us supports the circuit court's finding that Montoya had not remedied the cause of removal.

The fourth and final element required to be proved by ADHS was that ADHS made meaningful efforts to rehabilitate the parent and correct the conditions that caused removal. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*. Throughout the proceedings, the circuit court made findings that ADHS had made reasonable efforts to provide the family services and finalize a permanency plan for MC. Those prior orders were not appealed, and this court will not review reasonable-efforts findings regarding the time periods covered by prior orders not appealed. *Morton v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 388, 465 S.W.3d 871. Thus, this court will consider only the time moving forward from the permanency-planning hearing, which was held on October 15, 2024.

After the permanency-planning hearing, ADHS made additional referrals for parenting classes, individual counseling, an updated drug-and-alcohol assessment, and a psychological evaluation. Montoya did not complete any of these services. At the conclusion

15

of the TPR hearing, the circuit court found that ADHS had offered reasonable efforts to rehabilitate the issues that caused removal.

Montoya did not argue that ADHS failed to offer her meaningful services. Instead, she merely asked for additional time to work the services that had already been made available to her. A failure to challenge prior reasonable-efforts findings and a failure to request any specific services claimed as necessary to remedy the cause of removal are waived on appeal. *Peterson v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 75, 595 S.W.3d 38. There is sufficient evidence to support the circuit court's determination that ADHS made meaningful efforts to rehabilitate the parent and correct the conditions that caused removal.

The record before us supports that there was clear and convincing evidence to satisfy every element of the "failure to remedy" finding; as such, there is no meritorious defense to the circuit court's determination that statutory grounds existed.

In addition to finding the existence of at least one statutory ground to support TPR, a court must also find that TPR is in the child's best interest, taking into consideration two statutory factors: (1) the likelihood of adoption if parental rights are terminated and (2) the potential harm caused by continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Here, the court considered both statutory factors in light of the overall evidence, finding that TPR was in MC's best interest. Counsel contends that there are no issues of arguable merit for reversal in challenging this best-interest finding. We agree.

Regarding adoptability, both ADHS's family service worker and MC's foster mother provided testimony that MC is adoptable. MC has no special needs or impediments to

16

adoption. This court has held such evidence to be sufficient evidence to support the adoptability consideration of the best-interest analysis. *See Brabon v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 2, 388 S.W.3d 69. Thus, there was sufficient evidence that the circuit court had considered the likelihood of adoptability in accordance with Arkansas Code Annotated section 9-27-341(b)(3)(A) in finding that MC is adoptable. Accordingly, there is no meritorious challenge to this finding.

Regarding potential harm, the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Ross v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 503, 529 S.W.3d 692. Potential harm must be viewed in broad terms, and "potential" necessarily means that the court is required to look to future possibilities. *Id.* This court has frequently held that continued drug use, mental-health issues, and instability demonstrate potential harm sufficient to support a best-interest finding in a TPR case. *See, e.g., Beaird v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 415, 585 S.W.3d 172; *Murphy v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 426, 560 S.W.3d 465; *Robinson v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 262, 520 S.W.3d 322; *Rossie-Fonner v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 29, 388 S.W.3d 38.

Finally, counsel notes that, in addition to the TPR decision itself, she has reviewed the record for all adverse rulings to Montoya made by the circuit court on all objections, motions, and requests made at the TPR hearing in accordance with Arkansas Supreme Court Rule 6-9(j)(1)(A). Counsel discusses the two adverse rulings the circuit court made with respect to Montoya's objections. During the direct examination of MC's foster parent,

17

Brittany Kaiser, ADHS asked, "Does [MC]—when he refers to his mom—does he use certain words to refer to his mom?" Montoya's counsel objected on two grounds: first, that the testimony would be hearsay, and second, that the question had already been answered. The circuit court overruled both objections and allowed the testimony.

With respect to the hearsay objection, hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* Ark. R. Evid. 801(c) (2025). Hearsay testimony is generally inadmissible. Ark. R. Evid. 802 (2025). A statement is not hearsay, however, if it is offered against a party and is his or her own statement. Ark. R. Evid. 801(d)(2). Here, the testimony elicited was a statement made by MC to his foster mother. This court has held that statements of juveniles in dependency-neglect cases are not admissions by a party opponent under Rule 801(d)(2) of the Arkansas Rules of Evidence. *See Wilson v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 666, 476 S.W.3d 816. The circuit court held that the statement was not hearsay because the court did not believe the testimony was being offered for the truth of the matter asserted; rather, it was being used as a "reference." However, a review of this testimony indicates that it was intended to prove the truth of the matter asserted, which was that MC refers to his mom as "my crazy mom." Counsel acknowledges this as hearsay and that the circuit court erred in admitting the testimony. However, this court has stated that it will not reverse a circuit court's ruling on admissibility of evidence absent a manifest abuse of discretion and a showing of prejudice. *Id.* Without a showing of prejudice, any judicial error as to the admission of evidence is deemed harmless and is not grounds for reversing a

18

circuit court's order. *Id.* As discussed below, Montoya cannot show any prejudice as a result of the improperly admitted hearsay testimony.

Next, in accordance with Arkansas Rule of Evidence 403 (2025), evidence may be excluded by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. It is within the sound discretion of the circuit court to limit the introduction of cumulative testimony. *See Hutton v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 242, 646 S.W.3d 215. Below, the circuit court held that the testimony had not yet been received, stating, "I don't think that we've heard this before, so if I take your objection as asked and answered, I don't think that that's the case either." The circuit court was correct that the testimony regarding what MC calls his mother had not been previously provided. The circuit court was acting within its discretion to determine whether the testimony was cumulative, and it did not abuse its discretion in determining, correctly, that the evidence had not yet been introduced.

Our review indicates that neither of the adverse rulings resulted in prejudice to Montoya because the circuit court did not rely on MC's statement as a basis for any of its rulings related to TPR. Moreover, the ADHS court report, which was introduced without objection, contained similar statements made by MC including, "[MC] asked to end family time early on March 21st. [MC] stated he didn't want his mom to get crazy like she does a lot." Accordingly, the circuit court already had evidence of similar statements made by MC that had been provided through a separate form without objection. And because there was ample evidence to support the circuit court's TPR order without this testimony, any error in

admitting the hearsay testimony was harmless and does not provide a meritorious basis for appeal.

Finally, we hold that the denial of Montoya's request for additional time does not constitute a meritorious ground for reversal. The goal of the TPR statute is to provide permanency in a child's life when returning the child to the family home is contrary to the child's health, safety, or welfare, and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Morton*, *supra*. Under the facts and circumstances presented in this case, the need for MC's permanency and stability outweighed Montoya's request for additional time, and the circuit court did not err in denying her request.

IV. *Conclusion*

Having carefully examined the record and the no-merit brief, we hold that Montoya's counsel has complied with the requirements for a no-merit termination-of-parental-rights appeal and that the appeal is wholly without merit. Accordingly, we grant counsel's motion to withdraw and affirm the termination order.

Affirmed; motion to withdraw granted.

ABRAMSON and BARRETT, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.

20